IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

NATIONAL MEDICAL IMAGING, LLC et al.,
    Plaintiffs,
    v.

DVI RECEIVABLES XIV, LLC, et al.,
    Defendants.
_____

:
:
:
:
:
:
:
:
:

MISCELLANEOUS ACTION
NOs. 15-mc-146 and 15-mc-147

# MEMORANDUM OPINION

**RUFE, J.**                                                                                        **August 31, 2016**

      Plaintiffs National Medical Imaging, LLC and National Medical Imaging Holding Company, LLC have filed adversary proceedings in the United States Bankruptcy Court for the Eastern District of Pennsylvania against Defendants U.S. Bank, Lyon Financial Services, Jane Fox, Director of Operations for Lyon, Ashland Funding, DVI Funding, DVI Receivables XIV, DVI Receivables XVI, DVI Receivables XVII, DVI Receivables XVIII, and DVI Receivables XIX. Plaintiffs seek damages and attorneys' fees under 11 U.S.C. § 303(i)(1), 11 U.S.C. § 303(i)(2), and Federal Rule of Bankruptcy Procedure 9011 for the filing of involuntary bankruptcy petitions against Plaintiffs. Now before the Court are Plaintiffs' Motions to Withdraw the References from the Bankruptcy Court with respect to Plaintiffs' claims for damages under § 303(i)(2).[1] For the reasons discussed below, the Court will grant the Motions.

---

[1] 15-mc-146, Doc. No. 1, Attach. 1 at 2; 15-mc-147, Doc. No. 1 at 4. 11 U.S.C. § 303(i)(2) provides that when a bankruptcy court dismisses an involuntary bankruptcy petition the court my grant judgment "against any petitioner that filed the petition in bad faith, for—(A) any damages proximately caused by such filing; or (B) punitive damages."

I.       **FACTUAL AND PROCEDURAL HISTORY**

This case arises out of a complex securitization transaction that has spawned more than a decade of on-and-off again litigation in several courts, including multiple bankruptcy proceedings. In 2000, Plaintiffs National Medical Imaging, LLC ("NMI") and National Medical Imaging Holding Company, LLC ("NMI Holding") were affiliated with certain limited partnerships (the "NMI LPs") that operated a series of diagnostic imaging centers. The NMI LPs entered into master leases and equipment schedules (the "Master Leases") with DVI Financial Services, Inc. ("DVI Financial") to finance the purchase of medical diagnostic equipment. The leases were secured by a limited guaranty executed by Maury Rosenberg, the managing member of NMI and NMI Holding, and an additional guaranty by NMI and NMI Holding.

DVI Financial then transferred some of the Master Leases to DVI Funding, LLC, which held them directly, and the remainder were securitized and assigned to the DVI Receivables corporations. At the same time, DVI Funding entered into indentures with U.S. Bank, acting as trustee of the transaction, under which notes were issued to investors with the Master Leases serving as collateral. DVI Financial was appointed as servicer for the trustee, U.S. Bank, but after filing for bankruptcy in 2003, transferred its rights as servicer to Lyon Financial Services, a subsidiary of U.S. Bank.

A.       **The First Round of Litigation and the Settlement Agreement**

In December 2003, a Lyon subsidiary, U.S. Bank Portfolio Services, filed lawsuits against the NMI LPs, NMI, NMI Holding, and Rosenberg in Pennsylvania state court, alleging that the NMI LPs had defaulted on their Master Lease obligations. Several of the DVI entities then filed involuntary Chapter 11 bankruptcy petitions against NMI and NMI Holding. On August 12, 2005, Rosenberg, NMI, NMI Holding, the NMI LPs, and Lyon entered into a

2

comprehensive Settlement Agreement to resolve these disputes. Pursuant to the Settlement Agreement, the involuntary bankruptcy petitions were dismissed, and Lyon agreed to restructure the repayment obligations of the NMI LPs under the Master Leases and to release NMI and NMI Holding from all claims except those arising under the Settlement Agreement. In return, Rosenberg, and NMI and NMI Holding executed new guaranties of repayment and confessions of judgment in favor of Lyon. On March 2, 2007, DVI Funding sold all of its interests in the Master Leases to Defendant Ashland.

### B. Round Two: Judgment is Confessed, the Involuntary Petitions are Filed, and the Rosenberg Bankruptcy is Adjudicated in Florida

In March 2008, Lyon notified NMI and Rosenberg that the NMI LPs had defaulted on their repayment obligations under the Settlement Agreement, and in July that same year, Lyon filed a confession of judgment against Rosenberg, NMI, and NMI Holding in Pennsylvania state court. In November 2008, DVI Funding, despite having no remaining interest in the Master Leases, together with five other DVI entities, filed involuntary bankruptcy petitions against NMI, NMI Holding, and Rosenberg in the United States Bankruptcy Court for the Eastern District of Pennsylvania. The petitioners eventually sought to file an amended petition in all three proceedings to replace DVI Funding with Ashland Funding. After Rosenberg moved to dismiss the involuntary petition against him and to transfer venue to the United States Bankruptcy Court for the Southern District of Florida, where he resides, the Rosenberg bankruptcy proceedings were transferred to that district.

Following the transfer of venue and a hearing on Rosenberg's motion to dismiss, the Florida Bankruptcy Court issued a memorandum opinion and order dismissing the involuntary bankruptcy petition against Rosenberg (hereinafter "*Rosenberg I*").[2] The Florida Bankruptcy

---

[2] *In re Rosenberg*, 414 B.R. 826 (Bankr. S.D. Fla. 2009).

Court reached five alternative holdings: 1) there was no guaranty in favor of the DVI entities or Ashland, and therefore they were not creditors of Rosenberg; 2) the DVI entities and Ashland were not the real parties in interest; 3) the DVI entities were judicially estopped from filing the involuntary bankruptcy petitions because Lyon had claimed that the Rosenberg guaranty was owed to it when filing the confession of judgment in the Bucks County court; 4) Lyon was Rosenberg's only creditor because the Settlement Agreement constituted a novation; and 5) the DVI entities and Ashland held contingent claims subject to a *bona fide* dispute.[3]

On September 27, 2011, the United States District Court for the Southern District of Florida issued a memorandum opinion and order substantially affirming the Florida Bankruptcy Court's decision, (hereinafter "*Rosenberg II*"),[4] and, on July 6, 2012, the Eleventh Circuit issued a *per curiam* opinion affirming *Rosenberg II* in full (hereinafter "*Rosenberg III*").[5]

### C. The Eastern District Bankruptcy Court Gives Collateral Estoppel Effect to *Rosenberg I*

After *Rosenberg I*, the Eastern District of Pennsylvania Bankruptcy Court dismissed the involuntary bankruptcy petitions against NMI and NMI Holding on the basis of the collateral estoppel effect of *Rosenberg I*'s holdings that 1) the DVI entities and Ashland were not real parties in interest and 2) Lyon was the only creditor because the Settlement Agreement constituted a novation.[6] The DVI entities and Ashland appealed, and this Court affirmed the

---

[3] *Id.* at 840-44.

[4] Affirming in Part and Reversing in Part Bankruptcy Court's Orders, *DVI Receivables XIV, LLC, et al. v. Rosenberg*, No. 10-24347, Doc. No. 11 (S.D. Fla. Sept. 27, 2011).

[5] *In re Rosenberg*, 472 F. App'x 890 (11th Cir. 2012).

[6] *In re Nat'l Med. Imaging, LLC,* 439 B.R. 837, 847-52 (Bankr. E.D.).

Pennsylvania Bankruptcy Court's order.[7] The Third Circuit affirmed after Ashland appealed this Court's order.[8]

### D. Rosenberg's § 303(i) Adversary Proceeding

While the appeals to the Southern District of Florida and Eleventh Circuit were pending, Rosenberg brought a § 303(i) sanctions claim in an adversary proceeding in the Florida Bankruptcy Court.[9] The Defendants moved to withdraw the reference from the Bankruptcy Court, asserting that they had a Seventh Amendment Right to a jury trial. The Florida District Court granted Defendants' Motion in part and denied it in part, holding that there was a Seventh Amendment right to a jury trial for § 303(i)(2) claims for damages, but not for § 303(i)(1) claims for attorneys' fees and costs.[10] After the reference was withdrawn and a jury trial held, the jury returned a verdict in Rosenberg's favor, and that verdict was recently upheld by the Eleventh Circuit.[11]

### E. Plaintiffs NMI and NMI Holding's § 303(i) Adversary Proceedings

On May 27, 2014, Plaintiffs brought claims for attorneys' fees and costs under § 303(i)(1) and Bankruptcy Rule 9011 in two adversary proceedings in the Pennsylvania Bankruptcy Court. Plaintiffs also filed a complaint in this Court against Defendants seeking damages under § 303(i)(2). On March 30, 2014, this Court granted Defendants' Motion to Dismiss Plaintiffs'

---

[7] *DVI Receivables XIV, LLC v. Nat'l Med. Imaging, LLC*, 529 B.R. 607, 627 (E.D. Pa. 2015).

[8] *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, No. 15-1996, 2016 WL 1743475, at *1 (3d Cir. May 3, 2016).

[9] *Rosenberg v. DVI Receivables, XIV, LLC*, Adv. No. 10-3812 (Bankr. S.D. Fla.).

[10] *Rosenberg v. DVI Receivables, XIV, LLC,* 12-22275 (S.D. Florida 2012) at 3-5.

[11] *Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283, 1285 (11th Cir. 2016).

Complaint, holding that § 303(i)(2) does not create an independent cause of action that may be brought directly in the district court, finding instead that:

> The appropriate procedure is the one followed in the Rosenberg bankruptcy in Florida: all § 303(i) claims must be filed before the court that adjudicated the dismissal of the petition giving rise to the claims. If there is a basis for doing so, plaintiffs may then file a motion to withdraw the reference and the district court can then determine the merits of the argument that plaintiffs are entitled to a jury trial.[12]

Plaintiffs then filed Amended Complaints in the adversary proceedings, adding claims for damages under § 303(i)(2), and moved to withdraw the references from the Pennsylvania Bankruptcy Court as to the § 303(i)(2) claims. Plaintiffs do not seek to withdraw the reference as to their claims for attorneys' fees and costs under § 303(i)(1) and Bankruptcy Rule 9011.

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference for this District, "any and all proceedings arising under Title 11 or arising in or related to a chapter 7, 11, 12, or 13 case under Title 11 are and shall be referred to the Bankruptcy Judges for the district." Section 157(d) provides that "the district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or the timely motion of any party, for cause shown."

Whether a party has shown cause for withdrawal of reference is at the discretion of the district court.[13] As the Bankruptcy Court may conduct a jury trial only with the consent of the parties,[14] the district court may consider whether any party has demanded a jury trial and is

---

[12] *Nat'l Med. Imaging, LLC v. U.S. Bank, N.A.*, No. 14-2974, 2015 WL 1455987, at *5 (E.D. Pa. Mar. 30, 2015).

[13] *In re Cinematronics*, 916 F.2d 1444, 1451 (9th Cir. 1990).

[14] 28 U.S.C. § 157(e).

6

constitutionally entitled to trial by jury in determining whether to withdraw the reference.[15] District courts also consider factors including: "(1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping; (3) fostering economical use of resources; (4) expediting the bankruptcy process; and (5) timing of the request for withdrawal."[16]

### III.  DISCUSSION

Plaintiffs argue that there is cause to withdraw the references from the Bankruptcy Court for two reasons. First, Plaintiffs contend that they have a right to a jury trial on their claims for damages under § 303(i)(2).[17] Second, Plaintiffs contend that the Bankruptcy Court lacks the authority under Article III of the United States Constitution to render final judgment on their § 303(i)(2) claims.

Defendants contend that there is no cause to withdraw the references because the Bankruptcy Court has authority to adjudicate the claims, and because Plaintiffs have waived their right to a jury trial under the Settlement Agreement and the Guaranty. Even without a jury trial waiver, Defendants argue, Plaintiffs have no Seventh Amendment right to a trial by jury on these claims.

### A.  Whether Plaintiffs have Waived the Right to a Jury Trial

The 2005 Settlement Agreement contains a jury waiver provision that states: "Each [party] hereby unconditionally waives its right to a jury trial of any claim or cause of action based upon or arising out of, directly or indirectly, this agreement, or any other transaction

---

[15] *Feldman v. ABN AMRO Mortg. Grp. Inc.*, 515 B.R. 443, 446 (E.D. Pa. 2014).

[16] *Id.* at 445-46 (citing *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990)).

[17] 11 U.S.C. § 303(i)(2) provides that when a bankruptcy court dismisses an involuntary bankruptcy petition the court my grant judgment "against any petitioner that filed the petition in bad faith, for—(A) any damages proximately caused by such filing; or (B) punitive damages."

7

document or waiver contemplated hereby."[18] The 2005 Guaranty executed by the Plaintiffs pursuant to this Settlement Agreement contains the same waiver.[19]

The burden of proving that a jury waiver is enforceable rests with the party seeking to enforce the waiver.[20] "Because the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver. Nevertheless, as with other constitutional rights, the Supreme Court has long recognized that a private litigant may waive the right to a jury trial in a civil case. To be valid, a jury waiver must be made knowingly and voluntarily based on the facts of the case."[21]

Plaintiffs do not contest the validity of the waiver provisions, and argue only that their scope does not reach Plaintiffs' § 303(i)(2) claims for Defendants' alleged filing of involuntary bankruptcy petitions against Plaintiffs in bad faith.[22] In Plaintiffs' Amended Complaint, they allege that the involuntary bankruptcy petitions were filed to collect an alleged debt that was owed to Defendant Lyon under the 2005 Settlement Agreement and the Guaranty executed by Plaintiffs.[23] The Court finds that an action for damages based on Defendants' attempt to collect the debt owed pursuant to the Settlement Agreement and Guaranty through involuntary bankruptcy is at least indirectly "based upon or arising out of" the Settlement Agreement and

---

[18] Case No. 15-mc-146, Exh. A to Defs. Opp., Doc. No. 12 at 18-19.

[19] Case No. 15-mc-146, Exh. B to Defs. Opp., Doc. No. 12 at 4.

[20] *Brown & Brown, Inc. v. Cola*, No. 10-cv-3898, 2011 WL 4380445, at *4 (E.D. Pa. Sept. 20, 2011).

[21] *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) (internal quotation marks and citations omitted.).

[22] Case No. 15-mc-146, Pl.'s Reply, Doc. No. 16 at 7; Case No. 15-mc-147, Pl.'s Reply, Doc. No. 17 at 7.

[23] Adv. Pro. 14-250, Plaintiff NMI's Am. Comp., Doc. No. 53 at ¶ 6; Adv. Pro. 14-251, Plaintiff NMI Holding's Am. Comp., Doc. No. 53at ¶ 6.

8

Guaranty.[24] These claims are analogous to Rosenberg's counterclaims in the lawsuit brought by U.S. Bank against Rosenberg in this Court to enforce the Settlement Agreement. In that case, this Court found that Rosenberg's counterclaims for abuse of process and wrongful initiation of civil proceedings indirectly arose out of the Settlement Agreement, as they arose "out of [Rosenberg's] alleged injuries from U.S. Bank's enforcement strategy in light of alleged breaches of the Settlement Agreement and Guaranty."[25] Plaintiffs' claims here also arise out of injuries from Defendants' strategy to enforce the Settlement Agreement and the Guaranty, and thus fall within the scope of the jury trial waivers.

Because Plaintiffs' claims are within the scope of the waiver, the Court must determine whether all of the Defendants were parties to the Settlement Agreement, as "'a jury waiver is a contractual right and generally may not be invoked by one who is not a party to the contract.'"[26] Defendant Lyon was a party to the Settlement Agreement, and the Guaranty was executed in its favor. Defendant Fox signed the agreement on behalf of Lyon, and is being sued for her actions as an officer or agent of Lyon.[27] Lyon signed the Settlement Agreement as agent for Defendant U.S. Bank, and therefore it too may invoke the waiver.[28] Plaintiffs have thus waived their right to a jury trial as to Defendants Lyon, Fox, and U.S. Bank.

In contrast, Defendants Ashland Funding, DVI Funding, and DVI Receivables XIV, XVI, XVII, XVIII, and XIX were not parties to the Settlement Agreement, and the Guaranty was not

---

[24] Case No. 15-mc-146, Exh. A to Defs. Opp., Doc. No. 12 at 18-19; Case No. 15-mc-146, Exh. B to Defs. Opp., Doc. No. 12 at 4.

[25] *U.S. Bank, Nat'l. Ass'n v. Rosenberg*, No. 12-723, 2014 WL 2439427, at *1, *3 (E.D. Pa. May 30, 2014).

[26] *Brown & Brown, Inc. v. Cola*, No. 10-3898, 2011 WL 4380445, at *5 (E.D. Pa. Sept. 20, 2011) (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d 1151, 1166 (9th Cir.1996)).

[27] Case No. 15-mc-146, Exh. A to Defs. Opp., Doc. No. 12 at 18-19; Adv. Pro. 14-250, Plaintiff NMI's Am. Comp., Doc. No. 53 at ¶ 22; Adv. Pro. 14-251, Plaintiff NMI Holding's Am. Comp., Doc. No. 53 at ¶ 22.

[28] Case No. 15-mc-146, Exh. A to Defs. Opp., Doc. No. 12 at 18-19.

executed in favor of these Defendants.[29] The Florida and Pennsylvania Bankruptcy Courts relied on this fact to find that Defendants Ashland Funding, DVI Funding, and DVI Receivables XIV, XVI, XVII, XVIII, and XIX were not creditors of Rosenberg or Plaintiffs, were not real parties in interest, and therefore lacked standing to file the involuntary bankruptcy petitions.[30] These Defendants therefore may not invoke either jury trial waiver,[31] and thus Plaintiffs have not waived their right to a jury trial as to Defendants Ashland Funding, DVI Funding, and DVI Receivables XIV, XVI, XVII, XVIII, and XIX.[32]

---

[29] *See* Case No. 15-mc-146, Exh. A to Defs. Opp., Doc. No. 12 at 18-19; Case No. 15-mc-146, Exh. B to Defs. Opp., Doc. No. 12 at 4.

[30] *In re Rosenberg*, 414 B.R. 826, 840-44 (Bankr. S.D. Fla. 2009); *In re Nat'l Med. Imaging, LLC,* 439 B.R. 837, 848-52 (Bankr. E.D. 2009). The Florida Bankruptcy Court's decision was substantially affirmed by the district court, and the Eleventh Circuit, which held that "Lyon, through Fox, executed the 2005 settlement agreement containing the individual limited guaranty that Rosenberg made in connection with the equipment leases. The DVI Entities were not parties to this settlement, and any payment obligations created by the limited guaranty were owed to Lyon, not to the DVI Entities." *In re Rosenberg*, 779 F.3d 1254, 1268 (11th Cir. 2015). The Pennsylvania Bankruptcy Court's decision was affirmed by this Court, *DVI Receivables XIV, LLC v. Nat'l Med. Imaging, LLC*, 529 B.R. 607, 611 (E.D. Pa. 2015), and the Third Circuit then affirmed Defendant Ashland's appeal of this Court's order. *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, No. 15-1996, 2016 WL 1743475, at *1, *6 (3d Cir. May 3, 2016) ("[W]hen each guaranty is viewed in its entirety and in the context of the 2005 settlement agreement, it becomes clear that the parties intended both the Rosenberg Guaranty and the NMI Guaranty to owe an obligation only to Lyon.").

[31] *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, No. 07-406, 2010 WL 4909587, at *6 (E.D. Pa. Nov. 30, 2010) (holding that non-signatories may not enforce jury trial waivers, even where the jury trial waiver is broad enough to encompass claims involving the non-signatories, as this would "significantly expand the impact of jury waiver clauses" when courts must "indulge every reasonable presumption against waiver.") (internal citations and quotation marks omitted).

[32] Defendants also argue that Plaintiffs' jury trial demand was untimely. Under Federal Rule of Civil Procedure 38, which applies in bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9015(a), a party may demand a jury trial by "serving the other parties with a written demand--which may be included in a pleading--no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38. Before filing the adversary proceedings at issue, Plaintiffs filed motions in the involuntary bankruptcy proceedings for damages under § 303(i), and Defendants argue that Plaintiff was required by Rule 38 to file a jury demand within 14 days of Defendants' replies to these motions. Case No. 08-17351, Doc. No. 185; Case No. 08-17348, Doc. No. 176. However, Defendants' "interpretation, that the period began to run with [their] filing of reply papers on a motion, contradicts the definitional provisions of the Federal Rules which distinguish between pleadings and motions." *Windsurfing Int'l, Inc. v. Ostermann*, 534 F. Supp. 581, 585–86 (S.D.N.Y. 1982); Fed. R. Civ. P. 7. The Federal Rules of Bankruptcy Procedure also distinguish between pleadings and motions. Fed. R. Bankr. P. 1011; Fed. R. Bankr. P. 7012. Plaintiffs were therefore not required to make a jury demand until after a pleading as to the issue was filed, and Plaintiffs included jury demands in their Amended Complaints in the adversary proceedings, the first pleadings that raised a claim under § 303(i)(2). Adv. Pro. 14-250, Doc. No. 53; Adv. Pro. 14-251, Doc. No. 53. As a result, Plaintiffs' jury trial demand was timely. Even if the motion and responses to it were pleadings, the answers to

### B.  Whether Plaintiffs have a Right to a Jury Trial against Ashland Funding, DVI Funding and the DVI Receivables Corporations

The Seventh Amendment provides: "Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."[33] To determine whether a party has a Seventh Amendment right to a jury trial, courts engage in a three step analysis:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature…If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.[34]

Defendants do not attempt to argue that Plaintiffs' statutory action is *not* analogous to an 18th-century action, and the Court agrees with Plaintiffs that § 303(i)(2) is analogous to a common law claim for malicious prosecution or wrongful use of civil proceedings, as the elements are "nearly identical."[35] Under § 303(i)(2), Plaintiffs must establish that (1) Defendants filed an involuntary bankruptcy petition against them; (2) the Bankruptcy Court dismissed the petition for reasons other than "consent of all petitioners and the debtor"; (3) the petition was filed in bad faith and; (4) Plaintiffs sustained damages which were proximately caused by the

---

the Amended Complaints in the adversary proceedings would be the last pleading directed to the issue, and the jury trial demand would still be timely.

[33] U.S. Const. amend. VII.

[34] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989) (internal citations and quotation marks omitted).

[35] *In re Glannon*, 245 B.R. 882, 889 (D. Kan. 2000) (holding that a claim for damages under § 303(i)(2) is analogous to the common law claim for malicious prosecution); *Rosenberg v. DVI Receivables, XIV, LLC et al.,* 12-22275 (S.D. Florida 2012) at 3 (holding that § 303(i)(2) is analogous to malicious prosecution because both require bad faith).

filing.[36] To establish a claim for malicious prosecution, a plaintiff must show that the defendant (1) initiated, continued, or procured civil proceedings against another; (2) without probable cause and for a "purpose other than that of securing the proper adjudication of the claim in which the proceedings are based and; (3) the proceedings terminated in favor of the plaintiff.[37] Defendants likewise do not dispute that Plaintiffs' action is legal in nature. As Plaintiffs seek monetary damages, a remedy traditionally provided by courts at law, the Court finds that Plaintiffs' claims are legal in nature.[38]

As the first two factors indicate that Plaintiffs have a Seventh Amendment right to a jury trial, the Court next determines whether Congress may constitutionally assign resolution of § 303(i)(2) claims to bankruptcy courts. The Supreme Court has held that Congress may do so only where "the legal cause of action involves 'public rights.'"[39] The critical inquiry, in cases like this where the federal government is not a party, is whether Congress has created a "seemingly private right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary."[40]

Plaintiffs' claims for damages based on Defendants' alleged institution of involuntary bankruptcy proceedings against Plaintiffs are not "closely integrated" with the bankruptcy scheme. As in *Granfinanciera*, where the Supreme Court held that causes of action under the Bankruptcy Code for the right to recover fraudulent conveyances did not involve public rights, Plaintiffs' claims do not involve the "allowance and disallowance of [creditors'] claims" or the

---

[36] 11 U.S.C. § 303(i)(2).

[37] Restatement (Second) of Torts § 674(a) (1977).

[38] *Granfinanciera,* 492 U.S. at 47-49.

[39] *Id.* at 53.

[40] *Id.* at 54 (internal quotation marks omitted).

"restructuring of debtor-creditor relations."[41] Moreover, the Bankruptcy Court has dismissed the involuntary bankruptcy petitions against Plaintiffs, there is no bankruptcy estate to administer, and all that remains to be decided in the Bankruptcy Court are Plaintiffs' claims for damages, and attorneys' fees and costs under § 303(i) and Federal Rule of Bankruptcy Procedure 9011.[42] Plaintiffs' claims are "quintessentially suits at common law that more nearly resemble" state-law tort claims and thus involve private rights.[43]

Because Plaintiffs have a Seventh Amendment right to a jury trial on their § 303(i)(2) claims against Ashland Funding, DVI Funding, and DVI Receivables XIV, XVI, XVII, XVIII, and XIX, and in the interest of judicial economy and "fostering the economical use of the

---

[41] *Id.* at 58. *See also Germain v. Conn. Nat'l. Bank*, 988 F.2d 1323, 1331 (2d Cir. 1993) (finding claim did not involve public rights where it was "aimed at enhancing the bankruptcy estate and does not involve any other creditor's rights or the relationship among the creditors as a group or between the debtor and another creditor. The suit seeks compensation for damage done…It has nothing to do with the essence of the bankruptcy regulatory scheme of allowing or reordering claims.").

[42] Defendants cite a number of cases involving different provisions of the Bankruptcy Code that they contend support a finding that this case involves public rights. However, in the cases cited by Defendants, the courts did not find that the claims at issue were analogous to common law causes of action, and found that they were integral to the public bankruptcy scheme. *See e.g.*, *In re Gow Ming Chao*, No. 11-38131, 2011 WL 5855276, at *4 (Bankr. S.D. Tex. Nov. 21, 2011) (holding that conversion of a Debtors' Chapter 11 case to a Chapter 7 case is a public right, finding that conversion "is a very important feature of the Bankruptcy Code, and it is integral to the public bankruptcy scheme."); *In re Reeves*, 509 B.R. 35, 59 (Bankr. S.D. Tex. 2014) (finding the right to exempt property from the bankruptcy estate, the determination of the property of the estate, and the requirement to file amended Schedules and Statement of Financial Affairs were "central to the public bankruptcy scheme, as they relate to both the exercise of exclusive jurisdiction over the property of debtor's estate…and the equitable distribution of that property among the Debtors' creditors.").

[43] *Granfinanciera,* 492 U.S. at 56. *See also In re Glannon*, 245 B.R. at 891 (holding that § 303(i)(2) claims are private rights); *Rosenberg v. DVI Receivables, XIV, LLC,* 12-22275 at 5 (same). *See also Beard v. Braunstein*, 914 F.2d 434, 437 (3d Cir. 1990) (holding action under the Bankruptcy Code to recover money from the estate is a private right). Defendants also argue that even if Plaintiffs have a right to a jury trial, they have invoked the equitable jurisdiction of the Bankruptcy Court by filing motions under § 303(i) in the involuntary bankruptcy proceedings. While courts have held that a creditor loses its jury trial right by filing a proof of claim in bankruptcy court, the Third Circuit has held that this right is lost not only because by this action a creditor "voluntarily submits it to the jurisdiction of the bankruptcy court but also [because it] triggers the claims-allowance process." *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1251 (3d Cir. 1994). "The fact that the debtor may have voluntarily submitted itself to the bankruptcy court's equitable jurisdiction does not complete the analysis. A court must also ask whether the resolution of the particular dispute at issue is necessarily part of the process of the disallowance and allowance of claims." *Id.* at n. 14. As the resolution of Plaintiffs' § 303(i) motions would not trigger the claims allowance process, Plaintiffs' motions did not convert their claim from "a legal one into an equitable dispute over their share of the estate." *Id.* at 1253.

debtors' and creditors' resources," the Court holds that there is cause to withdraw the references from the Bankruptcy Court as to all Defendants on Plaintiffs' § 303(i)(2) claims.[44] It makes sense for there to be only one trial on Plaintiffs' claims, in which the Court will decide the claims as to Lyon, Fox, and U.S. Bank, and a jury will decide the claims against the remaining Defendants.

### IV.  CONCLUSION

For the reasons stated above, Plaintiffs' Motions to Withdraw the References from the Bankruptcy Court as to their § 303(i)(2) damages claims will be granted. An appropriate Order will be entered.

---

[44] *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d. 992, 999 (5th Cir. 1985). The Court therefore need not rule on Plaintiffs' contention that the Bankruptcy Court lacks authority to adjudicate their claims.