UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  NATIONAL MEDICAL IMAGING, LLC, | : | Chapter 7 |
| Debtor | : | Case No. 08-17351JKF |
| In re:  NATIONAL MEDICAL IMAGING | : | |
| HOLDING COMPANY, LLC, | : | Chapter 7 |
| Debtor | : | Case No. 08-17348JKF |

-----------------------------------------------

| | | |
|---|---|---|
| NATIONAL MEDICAL IMAGING, LLC, | : | Adv. No. 14-0250 |
| and NATIONALMEDICAL IMAGING | : | Adv. No. 14-0251 |
| HOLDING COMPANY, LLC, | : | |
| Plaintiffs | : | |
| v. | : | |
| U.S. BANK, N.A., et al. | : | |
| Defendants | : | |

# <u>MEMORANDUM OPINION</u>

# I.  <u>INTRODUCTION</u>

Before me for disposition are the motions filed by Defendants, U.S.

Bank, N.A. ("U.S. Bank"), Lyon Financial Services, Inc., d/b/a U.S. Bank

Portfolio Services ("Lyon"),[1]  DVI Receivables XIV, LLC, DVI Receivables XVI,

---

[1]    Defendant U.S. Bank is the successor by merger to Defendant Lyon. Amended Complaint, ¶13;
Revised Brief filed by Defendants U.S. Bank, Lyon, Fox and the DVI Defendants in Support of Motions,
note 1 at p. 1.

LLC, DVI Receivables XVII, LLC, DVI Receivables XVIII, LLC, DVI

Receivables XIX, LLC (together, "DVI Defendants"), DVI Funding, LLC ("DVI

Funding"), Ashland Funding, LLC ("Ashland") and Jane Fox ("Fox") (together,

"Defendants") to dismiss these amended adversary complaints (together, the

"Motions"). For the reasons that follow, I find that some of the arguments raised

by Defendants are premature and others lack merit. I will therefore deny the

Motions.

# II.  BACKGROUND

## A.  Factual Background.

On or about October 12, 2005, Plaintiffs, National Medical Imaging, LLC, National Medical Imaging Holding Company, LLC (together, "NMI") and Maury Rosenberg ("Rosenberg"), the Managing Member of NMI, and certain affiliated entities entered into a Settlement Agreement with the DVI Defendants and DVI Funding to resolve a dispute relating to certain equipment leases (the "Master Leases").  The DVI Defendants and DVI Funding were the lessors under the Master Leases, while Lyon functioned as servicer. Rosenberg executed an Individual Limited Guaranty and NMI executed Unconditional Continuing Guarantees (together, "Guarantees") of certain obligations under the Settlement Agreement. Pursuant to the Portfolio Sale Agreement dated March 2, 2007, Ashland acquired DVI Funding's right, title and interest in certain contracts, including some of the Master Leases that were the subject of the Settlement Agreement and Guarantees.

# B. <u>Procedural Background.</u>

On November 7, 2008, the DVI Defendants and DVI Funding filed involuntary bankruptcy petitions against NMI and Rosenberg. The involuntary petitions were signed by Fox. Fox signed the involuntary petitions on behalf of the DVI Defendants and DVI Funding as follows, "Jane Fox c/o US Bank Portfolio Services, as Servicer." These involuntary petitions were filed in the Philadelphia Division of this court and assigned to Judge Jean FitzSimon. On November 10, 2008, first amended involuntary petitions were filed against NMI and Rosenberg to add the names of related bankruptcy cases. On December 3, 2008, Rosenberg moved to dismiss or, alternatively, to transfer venue of the involuntary petition filed against him to his domicile in southern Florida. On December 4, 2008, NMI filed motions to dismiss the involuntary petitions filed against them pursuant to 11 U.S.C. §303(b)(1) and Fed. R. Bankr. P. 1011(b). A status hearing was held on these motions on January 21, 2009, at which time the parties discussed whether discovery was necessary and the DVI Defendants and DVI Funding agreed to Rosenberg's motion to change venue. By Order dated January 30, 2009, Judge FitzSimon transferred the Rosenberg Case to the Bankruptcy Court for the Southern District of Florida and it was assigned to Judge Jay Cristol. The Rosenberg Case was then closed in this Court.

On March 24, 2009, Judge FitzSimon entered a Pre-Trial Order addressing discovery and scheduling an evidentiary hearing on May 1, 2009 to hear NMI's motions to dismiss the involuntary petitions. This hearing was adjourned generally by her order dated April 20, 2009.

On April 10, 2009, the DVI Defendants and Ashland had filed their second amended involuntary petitions against NMI to substitute Ashland for DVI Funding as one of the six petitioning creditors.[2] The second amended involuntary petitions were signed by Fox on behalf of the DVI Defendants as follows "c/o Jane Fox, Lyon Financial Services, Inc. d/b/a US Bank Portfolio Services, as Successor Servicer and Agent for [the DVI Defendants]." She signed the second amended involuntary petitions on behalf of Defendant Ashland Funding as follows: "Ashland Funding, LLC, successor to DVI Funding, LLC, 196 W. Ashland St., Doylestown, PA."

On May 13, 2009, NMI filed motions to strike the second amended involuntary petitions. On the same day, the five remaining DVI Defendants[3] and Ashland filed motions for leave to file third amended involuntary petitions against

---

[2]    Pursuant to a Portfolio Sale Agreement dated March 2, 2007, Ashland acquired Defendant DVI Funding's rights, title and interest in certain master leases and contracts under which NMI was allegedly liable for certain indebtedness to the DVI Defendants and DVI Funding.

[3]    DVI Funding was not a petitioning creditor in the second or third amended involuntary petitions because it sold its interest in the contracts and master leases to Ashland.

NMI to correct an error that had been made in the calculation of the amounts

allegedly owed by NMI to the DVI Defendants and Ashland. NMI filed objections

to these motions on June 1, 2009.

On August 11, 2009, the NMI involuntary cases were assigned to me

by Judge FitzSimon. On August 24, 2009, I held oral argument on NMI's motions

to strike the second amended involuntary petitions and on the motions filed by the

DVI Defendants and Ashland for leave to file third amended involuntary petitions

against NMI. I entered bench orders at the conclusion of the oral arguments

denying NMI's motions to strike the second amended involuntary petitions and

granting the motions filed by the DVI Defendants and Ashland for leave to file

third amended involuntary petitions against NMI. Third amended involuntary

petitions were filed against NMI by the DVI Defendants and Ashland on August

26, 2009. The third amended involuntary petitions were signed by Fox as follows,

"c/o Jane Fox, Lyon Financial Services, Inc. d/b/a US Bank Portfolio Services, as

Successor Servicer and Agent…" She signed the third amended involuntary

petitions on behalf of Ashland as follows: "Ashland Funding, LLC, successor to

DVI Funding, LLC, 196 W. Ashland St., Doylestown, PA."

In the evening of August 24, 2009, the parties received notice that

Judge Cristol had dismissed with prejudice the involuntary bankruptcy petition

filed against Rosenberg. As a result, on August 25, 2009, NMI filed expedited

motions for determination of collateral estoppel and postponement of evidentiary
hearings on motions to dismiss (which were scheduled to commence that day).
Expedited argument was held on these motions that day, after which a briefing
order was entered and further argument was scheduled to be held on September 22,
2009. On December 28, 2009, I decided that at least three of Judge Cristol's six
alternative holdings were entitled to collateral estoppel effect in the NMI
involuntary petitions pending before me. I therefore entered Opinions and Orders
that day granting NMI's motions for determination of collateral estoppel and
dismissing the involuntary petitions with prejudice.

On January 4, 2010, NMI filed motions to award attorneys' fees and
costs and for compensatory, consequential, special, and punitive damages for the
bad faith filing of the involuntary petitions. These motions named the following
parties as respondents: (1) The DVI Defendants, (2) DVI Funding, (3) Ashland, (4)
Fox, individually and as a corporate representative of Lyon; (5) Lyon, (6) Robert
Pinel, Esquire, individually and as a partner of Flamm, Boroff & Pacine, P.C., (7)
Flamm, Boroff & Pacine, P.C., (8) Robert Brier, individually and as a
shareholder/partner of BG Management Services, Inc., (9) BG Management
Services, Inc. and (10) U.S. Bank.

Also on January 4, 2010, NMI filed expedited motions to, inter alia,
clarify whether I determined that the involuntary petitions were filed in bad faith,

confirm the persons and entities subject to the court's jurisdiction, and request

leave to file an adversary complaint. On January 11, 2010, the DVI Defendants and

Ashland filed motions to reconsider my December 28, 2009 decision granting

NMI's motions for determination of collateral estoppel and dismissal of the

involuntary petitions. I conducted a status conference among the parties on January

14, 2010. Because a motion to reconsider Judge Cristol's decision dismissing the

involuntary petition filed against Rosenberg was pending before Judge Cristol, and

because my December 28, 2009 decision gave collateral estoppel effect to Judge

Cristol's decision, on January 14, 2010, I stayed all proceedings in the NMI cases

that related in any way to the dismissal of the involuntary petitions pending

resolution by Judge Cristol of the motion for reconsideration pending before him.

On October 7, 2010, Judge Cristol denied the motion for

reconsideration of his decision dismissing the Rosenberg involuntary petition with

prejudice. On October 18, 2010, the petitioning creditors in the Rosenberg case

filed a notice of appeal of Judge Cristol's decision to the United States District

Court for the Southern District of Florida. On October 15, 2010, the DVI

Defendants and DVI Funding filed motions to vacate my stay orders. I held

hearings on these motions on December 1, 2010. On January 6, 2011, I denied the

motions to vacate the stay orders, deferring my consideration of the

reconsideration motions before me until the outcome of the Rosenberg bankruptcy

case appeal. I also deferred my consideration of the sanctions motions until the outcome of the reconsideration motions before me.

The District Court for the Southern District of Florida affirmed Judge Cristol's decision dismissing the Rosenberg involuntary petition with prejudice on September 28, 2011. The District Court decision was affirmed by the 11th Circuit Court of Appeals on July 6, 2012 and no additional appeals were filed.

Nothing more was filed in this court for a year and a half. On December 18, 2013, NMI filed motions to vacate my stay orders, which both the DVI Defendants and Ashland opposed. The parties thereafter filed a stipulation providing that the stay would be vacated to permit the motions for reconsideration to be decided, but would remain in effect for all other purposes and outlining the procedures for briefing the reconsideration motions. The parties submitted briefs and then I held argument on the motions for reconsideration on April 29, 2014.

At a hearing on May 2, 2014, I entered bench orders denying the motions for reconsideration, followed by written orders later that day. As part of the colloquy during the May 2 hearing, the parties agreed that my January 14, 2010 Order imposing a stay of the proceedings should be vacated. I therefore entered a bench Order that day, followed by a written Order on May 6, 2014, vacating my

January 14, 2010 stay Order. On May 13, 2014, I entered Statements in Support of my May 2, 2014 bench and written orders denying the motions for reconsideration.

The DVI Defendants and Ashland appealed my decisions granting NMI's motions for collateral estoppel, dismissing the involuntary petitions with prejudice, and denying their motions for reconsideration. Both the District Court and I denied motions to stay my decisions pending appeal. On March 24, 2015, the District Court affirmed my decisions granting NMI's motions for collateral estoppel, dismissing the involuntary petitions with prejudice, and denying the motions of DVI Defendants and Ashland for reconsideration. The Third Circuit Court of Appeals affirmed the District Court's decision on May 3, 2016.

On May 27, 2014, NMI had filed the two adversary complaints that are presently before me, in which they seek to recover, under 11 U.S.C. §303(i)(1) and Fed. R. Bankr. P. 9011: (1) Attorneys' fees and costs incurred in connection with (a) the NMI involuntary bankruptcy cases, (b) the litigation in these adversary proceedings, and (c) the efforts to recover and collect the attorneys' fees and costs to which they are entitled; (2) pre and post judgment interest; and (3) such other and further relief that I deem just and appropriate. On the same date, NMI filed a complaint in District Court against the same defendants, alleging the same facts, and seeking to recover in Count I, compensatory and punitive damages under 11

U.S.C. §303(i)(2) and in Count II, attorneys' fees and costs under 11 U.S.C. §303(i)(1) and Fed. R. Bankr. P. 9011.

On August 1, 2014, DVI Defendants, DVI Funding, U.S. Bank, Fox, and Ashland filed motions to dismiss the above adversary complaints and I established a briefing timetable. The defendants in the District Court action also moved the District Court to dismiss the complaint that was pending there. On October 30, 2014, all of the Defendants filed motions in these adversary proceedings to abate proceedings pending rulings by the District Court. Although I formally entered no order granting the motions, no further action took place in these adversary proceedings pending resolution by the District Court of the motion to dismiss the complaint before it.

On March 30, 2015, the District Court granted the defendants' motion to dismiss the complaint pending before it without prejudice to NMI's right to pursue the claims in the this court. Therefore, on April 23, 2015, NMI filed motions to amend the complaints in these cases to include counts requesting compensatory and punitive damages under 11 U.S.C. §303(i)(2). I granted those motions on May 13, 2015, and NMI filed amended complaints on May 14, 2015. The DVI Defendants, US Bank, Ashland, and Fox filed motions to dismiss the amended complaints on June 2, 2015.

A few days later, on June 5, 2015, NMI filed motions for withdrawal of reference, requesting the District Court to withdraw the reference of Count I of the amended complaints (the count that requested compensatory and punitive damages under section 303(i)(2)). NMI claimed they were allegedly entitled to a jury trial on these claims and did not consent to bankruptcy court jurisdiction to resolve these claims. On June 24, 2015, I entered orders staying all matters in these adversary proceedings pending the resolution of the motions to withdraw reference by the District Court. On August 31, 2016, the District Court granted NMI's motions to withdraw the reference of count I of the amended complaints.

On December 19, 2016, NMI filed notices that the District Court had granted their motions to withdraw reference.  I then held a conference call on December 21, 2016, after which I terminated the stay of these adversary proceedings and directed that revised briefs be filed on the motions to dismiss. All briefs have now been filed and the matter is finally ready for disposition. Because some of the issues raised in support of dismissal of these adversary complaints are advanced by only some of the Defendants, while others are advanced by all of the Defendants, I will address the individual arguments first and conclude with a discussion of the arguments advanced by all of the Defendants.

# III.  DISCUSSION

## A.  Arguments of U.S. Bank and Fox in Support of Their Motions To Dismiss.

### (1).  U.S. Bank and Fox argument that the amended complaints should be dismissed against them because I lack subject matter jurisdiction.

The first issue raised by U.S. Bank and Fox is that the claims against them should be dismissed because I lack subject matter jurisdiction over resolution of the claims. U.S. Bank and Fox argue that my December 28, 2009 orders in the main bankruptcy cases dismissing the involuntary petitions "reserved jurisdiction only to consider a motion for sanctions against 'Creditors' pursuant to Section 303(i) of the Bankruptcy Code."  See Revised Briefs in Support of Motions By Defendants US Bank and Jane Fox and DVI Defendants to Dismiss Amended Complaint[s] filed on January 26, 2017 (docket entry 89) at 3.  Because the term "Creditor" is defined in my December 29, 2009 decision in the main bankruptcy cases as the DVI Defendants and Ashland and did not refer to or include them, they argue, I lack subject matter jurisdiction over the claims against them. They further assert that NMI, in their motions to dismiss the involuntary petitions, only requested that I afford them "the right to pursue their claims and remedies under 11 U.S.C. §303(i) against the Petitioning Creditors." NMI never requested, they

argue, that I retain jurisdiction over third parties or that I modify the scope of the

retention of jurisdiction clause contained in my December 28, 2009 order

dismissing the involuntary petitions.

I agree with NMI, however, that bankruptcy courts clearly retain

jurisdiction to consider awarding a putative debtor section 303(i) damages after the

court dismisses the involuntary petition. The claims against US Bank and Fox are

core matters over which I have subject matter jurisdiction. See Honigman v. Adell

(In re John Richards Homes Bldg. Co., LLC), 405 B.R. 192, 210 (E.D. Mich.

2009); Glannon v. Carpenter (In re Glannon), 245 B.R. 882, 886 (D. Kan. 2000);

In re Fox, 171 B.R. 31, 33 (Bankr. E.D. Va. 1994).

In addition, U.S. Bank and Fox badly misquote the retention of

jurisdiction clauses contained in my December 28, 2009 orders.  Those clauses do

not, as US Bank and Fox suggest, "reserve jurisdiction only to consider a motion

for sanctions against "Creditors" pursuant to Section 303(i) of the Bankruptcy

Code." To the contrary, the retention of jurisdiction clauses contained in my

December 28, 2009 orders state:

> IT IS FURTHER ORDERED that I retain jurisdiction to determine
> possible sanctions pursuant to Section 303(i) of the Bankruptcy Code,
> 11 U.S.C. §303(i).
>
> IT IS FURTHER ORDERED that the Putative Debtors have until
> January 4, 2010, if they are so inclined, to file a motion requesting

possible sanctions against the Creditors pursuant to Section 303(i) of the Bankruptcy Code.

These orders do not limit my retention of jurisdiction to a sanctions motion against "Creditors." Instead, they broadly reserve jurisdiction to determine sanctions under section 303(i), and then set a deadline of January 4, 2010 for NMI to file any motions for sanctions against "Creditors." NMI met this deadline by filing, on January 4, 2010, the motions to award attorneys' fees and costs and for compensatory, consequential, special, and punitive damages for the bad faith filing of the involuntary petitions.  These motions named both U.S. Bank and Fox as respondents, as well as others. These motions were never heard, however, because on January 14, 2010, I stayed all proceedings in the NMI cases that related in any way to the dismissal of the involuntary petitions pending resolution by Judge Cristol of the motion for reconsideration pending before him.

For the reasons outlined above, I find that the claims against U.S. Bank and Fox are core proceedings and that the retention of jurisdiction clause in my December 28, 2009 orders was sufficiently broad in scope to include jurisdiction over those claims. I therefore conclude that I have subject matter jurisdiction over the claims against U.S. Bank and Fox.

## (2).  U.S. Bank and Fox argument that the claims against them are time barred and must therefore be dismissed.

The second argument advanced by U.S. Bank and Fox is that the claims against them are barred by a two year statute of limitations.  The involuntary petitions were initially filed on November 7, 2008 and dismissed on December 28, 2009.  These adversary complaints were then filed on May 27, 2014.

It is undisputed that the Bankruptcy Code does not contain a statute of limitations for claims brought under 11 U.S.C. §303(i). U.S. Bank and Fox argue, however, that because section 303(i) does not contain a statute of limitations, I should adopt the two year statute of limitations found in Pennsylvania's Dragonetti Act, 42 Pa CSA §5524(i). U.S. Bank and Fox claim that the Dragonetti Act is the state statute most analogous to section 303(i), because it applies to claims for wrongful use of civil proceedings and abuse of process. U.S. Bank and Fox maintain that NMI's cause of action accrued upon the dismissal of the involuntary petitions on December 28, 2009, and that the two year statute of limitations required the complaints to have been filed by December 27, 2011. U.S. Bank and Fox further argue that the two year statute of limitations was not tolled by my January 14, 2010 Orders staying all proceedings relating in any way to the dismissal of the involuntary bankruptcy petitions pending resolution by Judge Cristol of the motion for reconsideration pending before him. My stay Orders, they

claim, only applied to the Petitioning Creditors and regardless, NMI could have

filed the Complaints before my stay Orders were entered. In addition, they argue

that NMI could have sought relief from my stay Orders to file the complaints.

I agree again with NMI, however, that section 303(i) claims are not

subject to a statute of limitations (whether contained in the Bankruptcy Code or

borrowed from state law), but must be brought within a reasonable amount of time

that does not prejudice Defendants. See Klein v. Capital Finance, Inc. (In re

Capital Finance, Inc.), No. RS 02-19544-MG, 2007 WL 7535047, at *6-7 (B.A.P.

9th Cir.  Nov. 14, 2007); see also Hilrock Corp. v. Imani Fe, LP (In re Imani Fe,

LP), BAP No. CC-12-1111-HHaMk, 2012 WL 5418983, at *6 (B.A.P. 9th Cir.

Nov. 7, 2012). NMI claims it filed the complaints within a reasonable time,

showing that they attempted to file the complaints earlier but were prevented from

doing so by my January 14, 2010 stay orders, which I vacated on May 2, 2014.

I agree with NMI that my January 14, 2010 stay orders

prevented them from filing these adversary complaints while the stay remained in

effect. I further find and conclude that once I vacated the stay on May 2, 2014,

NMI acted promptly and within a reasonable time when it filed these adversary

complaints only three weeks later, on May 27, 2014. I also agree with NMI that

that U.S. Bank and Fox have neither alleged nor established that they were

prejudiced by the alleged delay in the filing of these adversary complaints.

Furthermore, I find and conclude that even if I were to agree with U.S.
Bank and Fox that a two year statute of limitations applied to the filing of these
adversary complaints, which I expressly find it does not, the statute of limitations
was tolled during the period that my January 14, 2010 stay Orders were in effect
(from January 14, 2010 until May 2, 2014, when my bench order was entered
vacating the stay). Excluding the period of time the stay was in effect from the
statute of limitations calculation, it is abundantly clear that the complaints were
filed within two years of the date the involuntary petitions were dismissed. As a
result, for the reasons stated above, I reject the statute of limitations argument
advanced by U.S. Bank and Fox.

## (3).  Fox argument that issue preclusion (otherwise known as collateral estoppel) prevents her from being liable on the claims alleged in the complaints.

Fox argues that the doctrine of issue preclusion (otherwise known as
collateral estoppel) precludes me from finding her liable on the claims alleged in
the complaints because Judge Cristol did not impose liability on her for
Rosenberg's attorney's fees and costs in Rosenberg v. DVI Receivables XIV, LLC,
(In re Rosenberg), Bankr. No. 09-13196-BKC- AJC, Adv. No. 10-3812-BKC-AJC-
A, 2012 WL 3990725, at *12 (Bankr. S.D. Fla. Sept. 11, 2012). While it is true that
Judge Cristol did not impose liability on Fox for Rosenberg's attorneys' fees and

costs, Fox concedes that Judge Cristol neither expressly discussed this issue nor

provided an explanation for this decision in his opinion. As such, it is impossible

for me to know whether the issues presented to Judge Cristol concerning Fox's

liability for attorneys' fees and costs are identical to the issues that will be

presented to me on this matter in these adversary proceedings. Issue preclusion,

therefore does not apply to Judge Cristol's determination that Fox was not liable

for Rosenberg's attorneys' fees and costs.  See Smith v. Cowden (In re Cowden),

337 B.R. 512, 530 (Bankr. W.D. Pa. 2006)(for federal principles of issue

preclusion/collateral estoppel to apply, the issue sought to be precluded must be

identical to the one that was decided in the prior action); see also Temple Univ. v.

White, 941 F.2d 201, 212 (3d Cir. 1991).

## (4).  U.S. Bank and Fox argument that they may not be held liable under 11 U.S.C. §303(i) because they are not "petitioners."

Section 303(i) provides that if an involuntary bankruptcy petition is

dismissed, a bankruptcy court may award attorneys' fees and costs against

"petitioners," and if bad faith is established, compensatory and punitive damages

may also be awarded against them. 11 U.S.C. §303(i). U.S. Bank and Fox contend

that they are not "petitioners" and they therefore argue that neither attorneys' fees

19

and costs nor compensation or punitive damages may be assessed against them under section 303(i).

I disagree. Although neither U.S. Bank nor Fox are "petitioners," the amended complaints allege sufficient facts to state claims against them under section 303(i) that are plausible on their face, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), based on either an agency or "de facto" petitioner theory. See DVI Receivables XIV, LLC v Rosenberg (In re Rosenberg), 779 F.3d 1254, 1268-69 (11th Cir. 2015); DVI Receivables XIV, LLC v. Rosenberg, 500 B.R. 174, 188-89 (S.D. Fla. 2013); In re Rosenberg, 2012 WL 3990725, at *7. The amended complaints allege that Fox, acting on behalf of Lyon,[4] and without authorization from the DVI Defendants, DVI Funding or Ashland (collectively "the Petitioning Creditors"), exercised exclusive control over the Petitioning Creditors and signed the involuntary petitions on their behalf. These facts are sufficient to state claims, plausible on their face, that U.S. Bank and Fox are liable for the filing of the involuntary petitions under section 303(i) based on either an agency or "de facto" petitioner theory. Id.

---

[4]     U.S. Bank is the successor by merger to Lyon. Amended Complaints, ¶13.

Fox also argues that the amended complaints should be dismissed against her because they do not allege that she was acting in her personal capacity when she filed the involuntary petitions. Again, I disagree. Under Pennsylvania law, employees of a corporation are liable for their own misfeasance or negligent conduct, even if they were acting within the scope of their employment when they engaged in the conduct in question. Hricik v. Stryker Biotech, LLC, 89 F. Supp. 3d 694, 700 (E.D. Pa. 2015):

> Pennsylvania law recognizes the participation theory, under which a corporate officer, employee, or other agent "who takes part in the commission of a tort by the corporation is personally liable therefor." Wicks v. Milzoco Builders, Inc., 503 Pa. 614, 470 A.2d 86, 90 (1983) (citation omitted); see also Sannuti v. Starwood Hotels & Resorts Worldwide, Inc., No. 14587, 2014 WL 1515650, at *2 (E.D. Pa. Apr. 16, 2014). To be liable under this theory, the corporate agent must have "participate[d] in the wrongful acts," a requirement the Pennsylvania courts have interpreted to permit liability for an agent's misfeasance, but not for "mere nonfeasance." Wicks, 470 A.2d at 90. Misfeasance consists of "the doing of something which ought not to be done, something which a reasonable man would not do, or doing it in such a manner as a man of reasonable and ordinary prudence would not do it." Sannuti, 2014 WL 1515650, at *2 (quoting Brindley v. Woodland Vill. Rest., Inc., 438 Pa. Super. 385, 652 A.2d 865, 868–70 (1995)). An employee may be liable under the participation theory for negligent as well as intentional conduct. See, e.g., Boyer, 913 F.2d at 112 (holding employees may be liable for fraud and misrepresentation committed in the course of their employment); Amabile v. Auto Kleen Car Wash, 249 Pa. Super. 240, 376 A.2d 247, 252 (1977) (holding employee could be liable for his own negligent conduct while acting as an agent of his employer).

Id. at 700-701.

21

The amended complaints allege that Fox filed the involuntary petitions without authorization from the Petitioning Creditors and that she did not know the identity of the officers or directors of the original Petitioning Creditors. Nor had she ever spoken to, e-mailed, or corresponded with any of the original Petitioning Creditors. They further allege that Fox conceded that only she, as the Director of Operations for Lyon, had the authority to sign the involuntary bankruptcy petitions, and that she conducted no due diligence or other investigation to determine (1) the number of creditors of NMI or Rosenberg, (2) whether the Petitioning Creditors were in fact creditors of NMI, or (3) whether there was a bona fide dispute regarding the obligations at issue. They also allege that the involuntary petitions were filed by the original Petitioning Creditors rather than by Lyon, the agent (a single entity), to artificially create six creditors for the improper purpose of attempting to satisfy the numerosity requirement of section 303(b). Based on these allegations, I find and conclude that the amended complaints allege sufficient facts to state a section 303(i) claim against Fox under a participation theory of liability, based on her alleged misfeasance or negligence, that are plausible on their face. Id.  See also Allison v. Chesapeake Energy Corp., (In re Allison), Civil Action No. 12-0900, 2013 WL 787257, at *11 (W.D. Pa. Jan. 29, 2013); Bethea v. Bristol Lodge Corp., No. Civ. A. 01-612, 2002 WL 31859434, at *15 (W.D. Pa. Dec. 18, 2002).

# B.  DVI Defendants, DVI Funding, U.S. Bank, and Fox Arguments in Support of Their Motions To Dismiss.

## (1).  DVI Defendants, DVI Funding, U.S. Bank, and Fox argument that only attorneys' fees and costs incurred in obtaining dismissal of the involuntary petitions are recoverable under section 303(i).

The DVI Defendants, DVI Funding, U.S. Bank and Fox argue that attorneys' fees and costs incurred by NMI after the involuntary petitions were dismissed are not recoverable under section 303(i) because section 303(i) is not a fee-shifting statute. I disagree.

### (a).  Argument that section 303(i)(1) permits recovery of reasonable fees and costs incurred obtaining the dismissal of the involuntary petitions and prosecuting the appeals of the dismissal orders and this adversary proceeding.

The 11th Circuit Court of Appeals and the District Court for the Southern District of Florida carefully and thoroughly analyzed this issue and correctly decided that the American Rule does not apply to attorneys' fees and costs recoverable under section 303(i)(1) because section 303(i)(1) is a fee-shifting statute. Rosenberg, 779 F.3d at 1265-66; Rosenberg, 500 B.R. at 183-84. Although I am not required to follow the holdings of these courts, I am persuaded by their apt and reasoned analysis that their decisions are correct.  Because I agree with these courts that section 301(i)(1) is a fee-shifting statute, I find that it permits

23

recovery of the reasonable attorneys' fees and costs incurred obtaining dismissal of

the involuntary petitions and prosecuting the appeals of the dismissal orders and

this adversary proceeding. Id. I also agree with Judge Cristol's thorough and astute

analysis in Rosenberg v. DVI Receivables, XIV, LLC, Case No. 0-9-13196-BKC-

AJC, Adv. No. 10-03182-BKC-AJC-A (March 16, 2017), that Baker Botts, L.L.P.

v. ASARCO LLC, 135 S. Ct. 2158 (2015) does not change this conclusion because

11 U.S.C. §330, the section of the Bankruptcy Code at issue in Baker Botts, is not

a fee-shifting statute. Baker Botts therefore, is inapplicable to this proceeding.

### (b).  Argument that I have discretion, under section 303(i)(1), to decide not to grant NMI reasonable attorneys' fees and costs incurred to prosecute its bad faith claims for damages under section 303(i)(2).

I also agree with the 11th Circuit's analysis and conclusion that section

303(i)(1), which allows for attorneys' fees and costs, applies to all phases of a

section 303(i) proceeding, including a proceeding under section 303(i)(2) for

compensatory and punitive damages. Rosenberg, 779 F.3d at 1267; see also

Orange Blossom Limited Partnership v. Southern California Sunbelt Developers,

Inc. (In re Southern California Sunbelt Developers, Inc.), 608 F.3d 456, 463–64

(9th Cir. 2010); ("If the court finds that the debtor is eligible for an award of fees,

then . . . the fee award presumptively encompasses all aspects of the §303 action,

including proceedings on claims under §303(i)(2)."); Glannon, 245 B.R. at 894–

95; In re Landmark Distrib., Inc., 195 B.R. 837, 845 (Bankr. D. N.J. 1996)

("[U]pon dismissal of an involuntary petition pursuant to [§]303(i), the court may

grant judgment against petitioning creditors and in favor of the alleged debtor for

costs and reasonable attorneys' fees whether related to the alleged debtor's efforts

to dismiss the petition pursuant to § 303(i)(1), or to prove bad faith or establish

damages pursuant to § 303(i)(2).") (emphasis in original); In re Advance Press &

Litho, Inc., 46 B.R. 700, 703 (Bankr. D. Colo. 1984). ("[N]othing in the Code or

case authority limit[s] an award to the date of dismissal. Preparation for and

attendance at the hearing on attorney's fees, costs and damages are also part of the

matters which are occasioned as a result of an Involuntary Petition. As such, they

are compensable under §303(i).")

> In other words:
>
> > §303(i)(1), which provides for attorneys' fees and costs, "applies to all
> > phases of a §303 proceeding in which the bankruptcy petition was
> > dismissed," while §303(i)(2), which allows for proximately caused
> > and punitive damages, "provides a [putative] debtor additional
> > recovery if the court finds that the petition was filed in bad faith." 245
> > B.R. at 894. Construing the §303(i) statute as a whole, the district
> > court in [Glannon] reasoned that attorney's fees and costs were
> > "recoverable under §303(i) without drawing a distinction between the
> > defensive phase, in securing dismissal, or in the offensive phase, in
> > being made whole where there was bad faith." Id.

Rosenberg, 779 F.3d at 1267 (quoting Glannon, 245 B.R. at 894).

I conclude that the 11th Circuit's interpretation of section 303(i) is both thorough and persuasive. I therefore find and conclude that section 303(i) must be read as a whole and that I have discretion under section 303(i)(1) to grant NMI the reasonable attorneys' fees and costs they incur to prosecute their bad faith claims for compensatory and punitive damages under section 303(i)(2). Id.

## (2). DVI Defendants, DVI Funding, U.S. Bank and Fox argument that pre-judgment interest is not recoverable because NMI's claims are unliquidated.

The DVI Defendants, DVI Funding, U.S. Bank and Fox maintain that NMI's claims for pre-judgment interest must be dismissed because they are unliquidated. I disagree. As NMI correctly points out, under both federal and Pennsylvania law, a court may award pre-judgment interest as a matter of equitable discretion. In re John Richards Homes Bldg. Co., LLC, 523 B.R. 83, 88 (Bankr. E.D. Mich. 2014); Bohm v. The Horsley Co. (In re Groggel), 333 B.R. 261, 299 (Bankr. W.D. Pa. 2005). Because the decision to award pre-judgment interest is within my discretion, it is a decision that can only be made after a complete factual record is developed and I have the opportunity to consider all facts and circumstances. Defendants' argument that NMI may not recover pre-judgment interest is therefore premature and one that is not properly the focus of a Rule 12(b)(6) motion to dismiss.

# C.  Ashland Arguments in Support of Its Motion To Dismiss.

## (1).  Ashland argument that NMI's claims against it are barred by issue preclusion (collateral estoppel).

Ashland argues that Judge Cristol's March 23, 2012 decision dismissing Rosenberg's section 303(i) complaint against it precludes NMI's claims against it in these adversary proceedings due to the doctrine of issue preclusion. I disagree.

As NMI correctly points out, neither the facts nor the issues before Judge Cristol were identical to the facts and issues before me in these matters. For this reason, the doctrine of issue preclusion cannot apply. Cowden, 337 B.R. at 530 (for federal principles of issue preclusion/collateral estoppel to apply, the issue sought to be precluded must be identical to the one that was decided in the prior action); see also White, 941 F.2d at 212.

In the Rosenberg case, Judge Cristol dismissed the first involuntary petition filed against Rosenberg, in which Ashland was not a petitioning creditor, and then denied as moot Rosenberg's motion to strike the second amended involuntary petition, which included Ashland as a petitioning creditor. Because the involuntary petition that Judge Cristol dismissed did not include Ashland as a petitioning creditor, Judge Cristol granted Ashland's motion to dismiss the section

303(i) complaint against it. Judge Cristol found that Ashland was not a petitioning

creditor in the involuntary petition that had been dismissed and that "ASHLAND

FUNDING was a party to a second amended involuntary petition that had no effect

on these bankruptcy proceedings." Rosenberg v. DVI Receivables XIV, LLC (In

re Rosenberg), Case No. 09-13196-BKC-AJC, Adv. No. 10-3812-BKC-AJC-A, at

*7 (Bankr. S.D. Fla. March 23, 2012).

Unlike the facts before Judge Cristol, Ashland was a petitioning

creditor in the involuntary cases against NMI that were dismissed. Although

Ashland was not a petitioning creditor in the original involuntary petitions filed

against NMI, it was named as a petitioning creditor in both the second and third

amended involuntary petitions filed against NMI. On August 24, 2009, I entered

bench orders denying NMI's motions to strike the second amended involuntary

petitions and granting the DVI Defendants' and Ashland's motions to file third

amended involuntary petitions. Because Ashland was an actual named petitioning

creditor in the second and third amended involuntary bankruptcy petitions that

were dismissed, the facts and issues before me are not identical to those that were

before Judge Cristol. Ashland's argument that Judge Cristol's March 23, 2012

decision is entitled to issue preclusion effect is therefore erroneous. Furthermore,

the fact that Ashland was not among the original petitioning creditors, but was

added as a petitioning creditor at a later date, does not alter its potential liability for

attorneys' fees, costs, and compensatory and punitive damages under section

303(i). See In re Kidwell, 158 B.R. 203, 216 (Bankr. E.D. Cal. 1993); see also In re

ELRS Loss Mitigation, LLC, 325 B.R. 604, 630 (Bankr. N.D. Okla. 2005). For all

of these reasons, Ashland's motion to dismiss based upon this argument must be

rejected.

## (2).  Ashland argument that the amended complaints fail to plead specific facts to establish that it was a petitioning creditor.

Ashland next argues that even though it was named as a petitioning

creditor in both the second and third amended involuntary petitions, the amended

complaints must nonetheless be dismissed because they allege that Fox caused the

involuntary petitions to be filed, Amended Complaints, ¶67, and that Fox was not

an officer, director, employee or agent of Ashland or any of the other petitioning

creditors, Amended Complaints, ¶54. Instead, the amended complaints allege that

Fox was the "Director of Operations" for Lyon and was acting as an officer or

agent of Lyon. Amended Complaints, ¶22.

As NMI correctly points out, however, the amended complaints also

allege that "[a]t all times material hereto, Defendant Ashland Funding, LLC

"Ashland Funding") was a Pennsylvania limited liability company controlled by

Lyon, who may be served with process c/o Lyon." Amended Complaints, ¶21.

Whether Fox had authority to sign the second and third amended petitions on

behalf of Ashland, and whether Ashland is liable under section 303(i) as a

petitioning creditor, are factual issues that cannot be adjudicated in the context of

this motion to dismiss. I therefore reject Ashland's attempt to have the amended

complaints dismissed because Fox allegedly lacked authority to sign the

involuntary petitions on its behalf. Instead, I find that the amended complaints

allege sufficient facts to state a plausible claim for relief against Ashland as a

petitioning creditor under section 303(i). See Ashcroft, 556 U.S.at 678; Twombly,

550 U.S. at 570. Ashland's motion to dismiss based upon this argument must be

rejected.

## (3).  Ashland argument that the amended complaints must be dismissed because relief under section 303(i)(1) is discretionary.

Ashland next maintains that the amended complaints must be

dismissed because I am not required by section 303(i)(1) to award attorneys' fees

and costs to NMI simply because the involuntary petitions were dismissed. Instead,

the decision to award attorneys' fees and costs under section 301(i)(1) is a matter

committed to my discretion.

Because the decision to award attorneys' fees and costs under section

303(i)(1) is within my discretion, it is one that can only be made after a factual

record is developed and complete and I have the opportunity to consider all the facts and circumstances. Ashland's argument that the amended complaints should be dismissed because an award of attorneys' fees and costs under section 303(i)(1) is not required is therefore premature and one that is not properly the focus of a Rule 12(b)(6) motion to dismiss. See In re Diloreto, 442 B.R. 373, 376 (E.D. Pa. 2010). Ashland's motion to dismiss based upon this argument must be rejected.

## D.  All Defendants Arguments in Support of Their Motions To Dismiss.

### (1).  All Defendants argument that NMI may not recover attorneys' fees and costs under Fed. R. Bankr. P. 9011.

**(a).  All defendants argument that the portions of the amended complaints that seek attorneys' fees and costs under Fed. R. Bankr. P. 9011 must be dismissed because section 303(i) provides the exclusive remedy to redress claims arising from an improper filing of an involuntary bankruptcy petition and preempts remedies that might otherwise be available under Fed. R. Bankr. P. 9011.**

Defendants first maintain that the portion of the Amended Complaints that seek attorneys' fees and costs under Fed. R. Bankr. R. 9011 must be dismissed because section 301(i) of the Bankruptcy Code provides the exclusive remedy to redress an improper filing of an involuntary bankruptcy petition and preempts a request for attorneys' fees and costs under Fed. R. Bankr. P. 9011. Defendants' argument, however, runs afoul of longstanding Third Circuit precedent that holds

to the contrary and provides that section 303(i) is not the exclusive remedy for

claims arising from the improper filing of an involuntary bankruptcy petition.

Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 52 (3d Cir. 1988); see

also Landon v. Hunt, 977 F.2d 829, 833 (3d Cir. 1992); In re Harker, 241 B.R. 357,

365 (Bankr. M.D. Pa. 1999); In re Int'l Mobile Advertising Corp., 117 B.R. 154,

158 (Bankr. E.D. Pa. 1990)("the Third Circuit Court of Appeals has made clear

that §303(i) is not the exclusive remedy for claims arising from improper filings of

involuntary bankruptcy petitions," citing Paradise Hotel, 842 F.2d at 52). I

therefore reject Defendants' argument and hold that section 303(i) is not an

exclusive remedy and does not preempt remedies available under Fed. R. Bankr. P.

9011 to redress damages caused by an improper filing of an involuntary

bankruptcy petition. Defendants' motion to dismiss based upon this argument must

be rejected.

### (b). All defendants argument that the portion of the amended complaints that seek recovery of attorneys' fees and costs under Fed. R. Bankr. P. 9011 must be dismissed because they were not raised by separate motion or request.

Defendants next argue that the portions of the amended complaints

that seek recovery of attorneys' fees and costs under Rule 9011 must be dismissed

because they were not raised in a separate motion or request. This argument is also

without merit. Here, NMI combined its requests for attorneys' fees and costs under

32

both Rule 9011 and section 303(i)(1) under a category in the second amended

complaints labeled "Second Claim For Relief." For the reasons that follow, I find

that this is an acceptable procedure. Moreover, if it did run afoul of Rule 9011's

"separate motion/request" mandate, it is harmless error.

I agree with the reasoning of the District Court which stated, in an

analogous situation, that

> although the request for Rule 11 sanctions must be by separate motion
> from the merits of the case, it would serve no purpose to require Rule
> 11 and §1927 motions to be filed separately. Such a requirement
> would only result in a multiplicity of pleadings. Thus, any error that
> exists is harmless.

DiPaolo v. Moran, No. Civ. A. 99-5974, 2003 WL 21961442, at *3 (E.D. Pa. June

30, 2003). Defendants' motion to dismiss based upon this argument must be

rejected.

### (c). U.S. Bank and Fox argument that they may not be found liable for attorneys' fees and costs under Fed. R. Bankr. P. 9011 because they were not "parties" in the involuntary bankruptcy case.

U.S. Bank and Fox next argue that they may not be found liable for

attorneys' fees and costs under Fed. R. Bankr. P. 9011 because they were not

parties in the involuntary bankruptcy case. I find this argument unpersuasive.

Rule 9011 can "be violated by a person who has signed a pleading,

motion, or other paper which has been filed with the court." Project 74 Allentown,

Inc, v. Frost, 143 F.R.D. 77, 83 (E.D. Pa. 1992).  As explained by the District

Court:

> Since a corporation can act only through its agents, officers or
> employees, Rule [9011] sanctions can be imposed on a corporation if
> a natural person, signing on the corporation's behalf, failed to make
> the appropriate pre-filing investigation. Business Guides, 498 U.S. at
> ——, 111 S. Ct. at 931–32, 112 L. Ed. 2d at 1157. The fact that the
> duties imposed by Rule 11 are personal and non-delegable, however,
> permits a court to sanction the individual who signed a paper on
> behalf of a corporation, as well as the corporation itself. See Navarro–
> Avala v. Nunez, 968 F.2d 1421, 1427 (1st Cir.1992) ("when a public
> official or corporate officer violated Rule 11 in the course of
> performing agentival duties, it is permissible—and frequently wise—
> from the standpoint of deterrence to direct that the offender pay a
> monetary sanction personally."); Ultracashmere House Ltd. v.
> Nordstrom, Inc., 123 F.R.D. 435, 437 (S.D. N.Y.1988) (imposing
> sanctions on both a corporation and on the corporation's president); cf.
> Pavelic & LeFlore v. Marvel Group, 493 U.S. 120, 122–24, 110 S. Ct.
> 456, 457–59, 107 L. Ed. 2d 438, 443 (1989).

Id. at 83, n.7.  Therefore, "all signatories to a bankruptcy petition, including

Bankruptcy counsel and a debtor's officer or representative, subject themselves to

Bankruptcy Rule 9011." In re Coquicou, 508 B.R. 929, 940 (Bankr. E.D. Pa.

2014).

Here, the amended complaints allege that Fox "was the Director of

Operations for Lyon and she engaged in the wrongdoing alleged herein as an

officer and/or agent for and on behalf of Lyon." Amended Complaints, ¶22. They

34

also allege that U.S. Bank "is the successor by merger to [Lyon]." Amended

Complaints, ¶13. These allegations are sufficient to state claims against both U.S.

Bank and Fox under Rule 9011 because a court may sanction both "the individual

who signed a paper on behalf of a corporation, as well as the corporation itself."

Project 74, 143 F.R.D. at 83. Defendants' motion to dismiss based upon this

argument must be rejected.

### (d). All defendants argument that NMI's claims for attorneys' fees and costs under Fed. R. Bankr. P. 9011 must be dismissed because NMI failed to comply with the <u>Pensiero</u> supervisory rule.

In <u>Mary Ann Pensiero, Inc. v. Lingle</u>, 847 F.2d 90, 100 (3d Cir.

1988), the Third Circuit announced what has become known as the <u>Pensiero</u>

"supervisory rule," which is to be applied to motions filed under Fed. R. Civ. P. 11,

as follows:

> To carry out the objectives of expeditious disposition, we adopt as a
> supervisory rule for the courts in the Third Circuit a requirement that
> all motions requesting Rule 11 sanctions be filed in the district court
> before the entry of a final judgment. Where appropriate, such motions
> should be filed at an earlier time—as soon as practicable after
> discovery of the Rule 11 violation.

The Third Circuit explained that the purpose of this rule is to assure that the

earliest practicable notice is given to the offending party and to avoid fragmented

litigation. Id. at 99-100. Although a non-precedential Third Circuit decision held

that the <u>Pensiero</u> supervisory rule applied to motions filed under Fed. R. Bankr. P.

9011, <u>see</u> <u>Piscitelli v. Mirow</u> (<u>In re Nicola</u>), 65 Fed. Appx. 759, 762 (3d Cir. 2003),

a more recent published Third Circuit decision questioned its continued viability in

the bankruptcy setting, <u>In re Schaefer Salt Recovery, Inc.</u>, 542 F.3d 90, 101 (3d Cir

2008), but ultimately concluded it did not need to decide the issue because the

bankruptcy court had awarded sanctions under 28 U.S.C. §1927, which is not

subject to the <u>Pensiero</u> supervisory rule, and not under Rule 9011.

In <u>Schaefer Salt</u>, the Third Circuit questioned "whether the

supervisory rule … retain[ed] much if any viability following the 1993 and 1997

amendments to Rules 11 and 9011," as well as whether "Bankruptcy Rule 9011 is

really the equivalent sanctions rule to Rule 11." <u>Id</u>. at 99-100. The Third Circuit

then noted:

> Bankruptcy proceedings are unique, witness, for example, the
> automatic stay. Under the Bankruptcy Code, the filing of a petition for
> bankruptcy operates, with some exceptions, as a stay of the
> commencement or continuation of certain judicial, administrative, or
> other actions or proceedings against the debtor, enforcement of
> judgments against a debtor or the property of the estate, and other acts
> by creditors against debtors. 11 U.S.C. § 362(a). The purpose of the
> automatic stay is "to afford the debtor a 'breathing spell' by halting
> the collection process. It enables the debtor to attempt a repayment or
> reorganization plan with an aim toward satisfying existing debt." <u>In re</u>
> <u>Siciliano</u>, 13 F.3d 748, 750 (3d Cir.1994). It also benefits creditors by
> preventing certain creditors from acting unilaterally to obtain payment
> from the debtor to the detriment of other creditors. <u>Maritime Elec.</u>
> <u>Co., Inc. v. United Jersey Bank</u>, 959 F.2d 1194, 1204 (3d Cir.1991).

Congress addressed the serious consequences of the automatic stay by adding an exception to the safe harbor provision in the 1997 amendments to Bankruptcy Rule 9011 when the offending "paper" is a petition for bankruptcy, something it did not do in the amendments to Rule 11 in 1993.7 Fed. R. Bankr.P. 9011(c)(1)(A). ... Congress explained the reason for the bankruptcy petition exception:

> The filing of a petition has immediate serious consequences, including the imposition of the automatic stay under § 362 of the Code, which may not be avoided by the subsequent withdrawal of the petition. ...

Fed. R. Bankr. P. 9011 advisory committee's notes to 1997 amendments. The exception evidences a concern that a party subject to an automatic stay would be forced to choose between seeking sanctions, which would require it to wait up to twenty-one days before seeking dismissal of the petition, and the immediate filing of a motion to dismiss the bad faith petition. Without the exception, a party would be forced to abandon its request for sanctions in order to seek dismissal of the petition as quickly as possible.

Id. at 100. These same concerns arise when a putative debtor is wrongfully subjected to the filing of an improper involuntary bankruptcy petition. In fact, the consequences of an improperly filed involuntary petition on a putative debtor can actually be more devastating than those faced by a creditor who is subjected to the automatic stay created by an improperly filed bankruptcy petition. In such a situation, the putative debtor is forced to expend time and funds to defend the involuntary petition and may find itself cut off from financing that otherwise would have been available. As a result, the putative debtor may be forced to abandon or delay its sanctions request to seek a speedy dismissal of the involuntary petition.

In addition, the case law makes clear that, even when the <u>Pensiero</u> supervisory rule applies, it need not be rigidly enforced. "[T]he supervisory rule … is intended … to be a guide for litigants filing Rule 11 motions for sanctions, generally requiring them to do so as early as practicable, but not necessarily 'establish[ing] a per se test for promptness' that requires dismissal for noncompliance under all circumstances." <u>In re Tobacco Road Assoc., L.P.</u>, Civil Action No. 06-CV-2637, 2007 WL 966507, at *22 (E.D. Pa. March 30, 2007)(quoting <u>Comuso v. Nat'l R.R. Passenger Corp.</u>, No. 97-CV-7891, 2000 WL 502707, at *2 n. 2 (E.D. Pa. Apr.26, 2000). <u>See</u> <u>also</u> <u>Coquico</u>, 508 B.R. at 938-40; <u>Theokary v. Shay</u> (<u>In re Theokary</u>), Bankr. No. 07-11008ELF, Adv. No. 09–051, 2012 WL 3717967, at 2, n. 4 (Bankr. E.D. Pa. Aug. 22, 2012). As the District Court stated in <u>Tobacco Road</u>, the <u>Pensiero</u> supervisory rule

> provides the courts in the Third Circuit with the discretion to avoid consideration of Rule 11 motions filed after final judgment is entered in order to promote judicial economy, it also appears to leave the courts with some discretion in deciding when it is practicable to file a Sanctions Motion.

<u>Tobacco Road</u>, 2007 WL 966507, at *22 (footnote and quotation marks omitted).

Chief Judge Frank thoroughly analyzed the <u>Pensiero</u> supervisory rule and its applicability in the bankruptcy context in a succinctly well worded footnote, which I incorporate herein:

More than twenty (20) years ago, in <u>Pensiero</u>, the Court of Appeals announced a supervisory rule requiring that all motions for sanctions under Fed.R.Civ.P. 11 be filed before the entry of final judgment. The purpose of the supervisory rule is to conserve judicial resources by maximizing the likelihood that an appeal of a Rule 11 decision may be resolved at the same time as any appeal on the merits. The supervisory rule is intended to "eliminat[e] piecemeal appeals and avoid[ ] scenarios in which two separate appellate panels are forced to acquaint themselves with the pertinent facts and the parties' respective positions." <u>In re Tobacco Road Associates, LP</u>, 2007 WL 966507, at *22 (E.D. Pa. Mar. 30, 2007).

Although the Court of Appeals has not stated so expressly in a precedential decision, courts in this circuit have held that the Rule 11 supervisory rule applies when Rule 9011 sanctions are sought in bankruptcy proceedings. See, e.g., <u>In re Nicola</u>, 65 F. App'x 759, 762 (3d Cir. 2003) (nonprecedential); see also <u>Schaefer Salt</u>, 542 F.3d at 98 (collecting cases). I will follow the existing precedent in this regard.

Since its adoption, the supervisory rule has been both expanded and restricted. The Court of Appeals has applied the supervisory rule to a district court's sua sponte imposition of Rule 11 sanctions, see <u>Simmerman v. Corino</u>, 27 F.3d 58 (3d Cir. 1994), and the imposition of sanctions under the court's inherent power, see <u>Prosser v. Prosser</u>, 186 F.3d 403 (3d Cir. 1999). More recently, however, the Court declined to extend the supervisory rule to sanctions imposed under 28 U.S.C. § 1927. See <u>Schaefer Salt</u>, 542 F.3d at 102. Whether <u>Schaefer Salt</u> is a precursor to further contraction of the <u>Pensiero</u> supervisory rule is not for this court to say. Unless and until the Court of Appeals directs otherwise, this court is bound to apply the supervisory rule.

A mechanical application of the supervisory rule would mandate denial of the Motion for Sanctions because it was filed: (a) seventeen (17) months after the court's February 15, 2011 order entering judgment in favor of the remaining Defendants (if that was a final order, but see <u>Theokary</u>, 444 B.R. at 310 n. 6) and (b) three (3) months after the April 10, 2012 order entering judgment against the remaining Defendants.

The supervisory rule, however, may not be so rigid. For example, in In re Brown, 1998 WL 848102, at *4–5 (E.D. Pa. Dec. 4, 1998), the district court affirmed the bankruptcy court's grant of a Rule 11 motion filed three (3) weeks after the entry of the final judgment. The court reasoned that, in the particular circumstances of that case, the movant's discovery of the Rule 11 violation was so close in time to the entry of judgment that the filing of the motion was sufficiently prompt as to warrant the relaxation of the supervisory rule. Accord Project 74 Allentown, Inc. v. Forst, 143 F.R.D. 77, 85–87 (E.D. Pa. 1992).

Theokary, 2012 WL 3717967, at 2, n. 4.

As can be gleaned from a review of the cases cited above, determining whether the Pensiero rule has been violated in the bankruptcy context often depends on the circumstances of each case, which may at times require development of a factual record not in existence at the motion to dismiss stage of a proceeding. Such is the case here. This case presents many unique facts that may impact my decision on whether the Pensiero rule has been violated, yet these facts have not been fully developed on the record.[5] In addition, it may be unnecessary

---

[5]     Whether it was practicable for NMI to have filed their Rule 9011 sanctions request at an earlier time is difficult to say on the record now before me. Many factors could influence my decision, some of which follow: (1) Whether NMI was required to devote substantial time and funds towards their efforts to have the improperly filed involuntary petitions dismissed, and if so, how this detracted from their ability to devote time and funds to filing and prosecuting Rule 9011 motions; (2) whether the fact that NMI filed motions for sanctions on January 4, 2010 placed Defendants on sufficient notice that NMI would be seeking attorneys' fees and costs against them under Rule 9011; (3) why NMI did not include a request for Rule 9011 sanctions in the sanctions motions it filed on January 4, 2010; (4) why NMI did not seek relief from my stay Orders, which were in effect from January 14, 2010 until May 2, 2014, to prosecute Rule 9011 motions; and (5) whether, given the circumstances of the case (which must be developed on the record), the amount of time that passed between my vacating of my stay Orders on May 2, 2014, and NMI's filing of this adversary complaint on May 27, 2014, was sufficiently prompt to warrant a finding that the Pensiero rule was not violated.

I made a prior finding that, for statute of limitation purposes, NMI acted promptly when it filed these adversary proceedings. See discussion at p. 17, infra. That finding might or might not be relevant or

for me to rule on NMI's Rule 9011 sanctions request, if I ultimately conclude that

the same sanctions are warranted under section 303(i)(1). In such a situation,

NMI's Rule 9011 request for attorneys' fees and costs might be rendered moot. For

these reasons, I shall defer ruling on whether NMI's request for Rule 9011

sanctions runs afoul of the <u>Pensiero</u> supervisory rule until trial on the merits of

these adversary proceedings. Defendants' motion to dismiss based upon this

argument must be rejected.

## (2).  **All defendants argument that section 303(i)(1) does not provide for joint and several liability.**

All Defendants argue that joint and several liability may not be

imposed against them under section 303(i)(1). As NMI aptly points out, however,

the decision whether to impose joint and several liability on defendants under

section 303(i)(1) is one that is within the discretion of the court, to be made after

considering the totality of the circumstances based on a fully developed record.

Even the cases cited by Defendants acknowledge that this is the state of the law:

> When examining the totality of the circumstances, courts should
> consider the "relative culpability among the petitioners, the motives or
> objectives of individual petitioners in joining in the involuntary
> petition, the reasonableness of respective conduct of the debtors and
> petitioners, and other individualized factors." <u>Sofris v. Maple–
> Whitworth, Inc. (In re Maple–Whitworth, Inc.</u>),556 F.3d 742, 745–46
> (9th Cir. 2009); <u>Rosenberg</u>, 471 B.R. at 317; <u>see also Higgins</u>, 379

---

controlling on whether the portions of the complaints in the above adversary proceeding seeking relief
under Bankruptcy Rule 9011 were filed in a timely manner under the <u>Pensiero</u> rule.

F.3d at 707 (stating that a court should consider (1) the merits of an involuntary petition, (2) the role of any improper conduct on the part of the alleged debtor, (3) the reasonableness of the actions taken by petitioning creditors, (4) the motivation and objectives behind filing the petition, and (5) other material factors the court deems relevant); Legacy Real Estate Invs., LLC v. Miller (In re Miller),2012 U.S. Dist. LEXIS 40921, at *33 (N.D. Ok. Mar. 26, 2012) (same).

Finally, after applying this test, courts not only have discretion to award fees and costs to the debtor, the court also has the discretion to "hold all or some petitioners jointly or severally liable for costs and fees, to apportion liability according to petitioners' relative responsibility or culpability, or to deny an award against some or all petitioners, depending on the totality of the circumstances." Maple–Whitworth, 556 F.3d 742, 746 (9th Cir.2009); Legacy Real Estate Invs., 2012 U.S. Dist. LEXIS 40921, at *33–34; Rosenberg, 471 B.R. at 317 (citing In re Southern California Sunbelt Developers, Inc., 608 F.3d 456 (9th Cir.2010); In re Ross, 135 B.R. 230, 240 (Bankr. E.D. Pa. 1991)).

In re Quantum Coal, LLC, Case No. 12-00260-8-SWH, 2013 WL 3733182, at *12

(Bankr. E.D.N.C. July 15, 2013). Because the decision to impose joint and several

liability on Defendants under section 303(i)(1) is committed to my discretion and

can be made only after I have an opportunity to consider the totality of the

circumstances, Defendants' argument that joint and several liability may not be

imposed against them under section 303(i)(1) is plainly wrong. Defendants' motion

to dismiss based upon this argument must be rejected.

# IV.  CONCLUSION

For the reasons discussed above, I find that the arguments advanced by Defendants in support of their Motions To Dismiss the amended complaints either lack merit or are premature and not the proper subject of a motion to dismiss. I will therefore enter an Order denying Defendants' Motions To Dismiss the amended complaints.

An appropriate Order follows.

BY THE COURT

DATE: June 30, 2017

_____
RICHARD E. FEHLING
United States Bankruptcy Judge