### UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **NATIONAL MEDICAL IMAGING, LLC** | **Bky. No. 08-17351 (ELF)** |
| **NATIONAL MEDICAL IMAGING HOLDING COMPANY, LLC,** | **Bky. No. 08- 17348 (ELF)** |
| **NATIONAL MEDICAL IMAGING, LLC** **NATIONAL MEDICAL IMAGING HOLDING COMPANY, LLC,** **Plaintiffs,** **v.** **U.S. BANK, NATIONAL ASSOCIATION, et al.** **Defendants.** | **Adv. No. 14-250** **Adv. No. 14-251** |

# O P I N I O N

## I.  INTRODUCTION

The Plaintiffs in these adversary proceedings are two (2) affiliated, putative debtors, National Medical Imaging, LLC and National Medical Imaging Holding Company, LLC ("the Debtors").  The involuntary petitions filed in 2008, were dismissed by the bankruptcy court in 2009.

In this adversary proceeding,[1] filed in 2014, the Debtors seek an award of attorney's fees and costs under 11 U.S.C. §303(i)(1) from the petitioning creditors, Defendant U.S. Bank,

---

[1] For ease of reference, I will refer to the two (2) adversary proceedings collectively in the singular.

National Association ("U.S. Bank") and several related Defendants ("the U.S. Bank Related

Defendants"),[2] and Ashland Funding, LLC ("Ashland") (when referred to collectively, "the

Defendants").[3]

Section 303(i)(1) provides that "[i]f the court dismisses a petition under this section other

than on consent of all petitioners and the debtor, and if the debtor does not waive the right to

judgment under this subsection, the court may grant judgment — (1) against the petitioners and in

favor of the debtor for —  (A) costs; or  (B) a reasonable attorney's fee."

Also playing a central role in this adversary proceeding is 11 U.S.C. §303(i)(2), which

provides that after dismissal of a petition, other than on consent and in the absence of waiver, the

court may grant judgment "against any petitioner that filed the petition in bad faith, for  .  .  .  any

damages proximately caused by such filing; or  .  .  .  punitive damages."

Presently before the court are: (1) a motion for partial summary judgment filed by the U.S.

Bank Related Defendants ("the U.S. Bank Motion") and (2) a motion for summary judgment filed

by Ashland ("the Ashland Motion").

The primary issues raised by these motions are whether, as a result of the dismissal of the

involuntary petitions, the Debtors are entitled to an award of counsel fees under §303(i)(1) for

services other than those directly rendered in obtaining dismissal of the involuntary petitions and

defending the dismissal order on appeal.  Those other services include services rendered in

---

[2]     The U.S. Bank Related Defendants are DVI Funding, LLC, DVI Receivables XIV, LLC, DVI
Receivables XIX, LLC, DVI Receivables XVI, LLC, DVI Receivables XVII, LLC, DVI Receivables XVIII,
LLC, Jane Fox and Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services.

[3]     For more on why this adversary proceeding, filed in 2014, and arising from a bankruptcy case filed
in 2008, has lingered into 2022, see Part II, infra.

2

connection with:

>  (1) the Debtors' unsuccessful litigation pursuing their claim for damages under 11 U.S.C. §303(i)(2);

>  (2) the Debtors' unsuccessful litigation in the state courts in Florida in which the Debtors sought to prevent the U.S. Bank from employing its state court judgment against the Debtors to schedule an execution sale of the Debtor's then pending §303(i)(2) claim;

>  (3) the Debtors subsequent, voluntary chapter 11 bankruptcy cases, filed on June 12, 2020 (Bky. Nos. 20-12618, 20-12619) ("the 2020 Bankruptcy Cases");

>  (4) the adversary proceeding filed by the Debtors after the commencement of their bankruptcy cases in 2020 in which they obtained a declaratory judgment that U.S. Bank may not: (a) set off its judgments against the Debtors' recovery under 11 U.S.C. §303(i)(1) or (b) employ its judgment to execute against the Debtors' §303(i)(1) claims, (see Adv. No. 20-219, Doc. # 45).

U.S. Bank has moved only for partial summary judgment.  It requests that the court determine that U.S. Bank is not liable for §303(i)(1) costs and attorney's fees that Debtors seek in connection with four (4) categories of legal expenditures stated above.  U.S. Bank has not moved for summary judgment on the Debtors' request for costs and attorney's fees incurred in obtaining dismissal of the involuntary petitions.  That issue remains for trial.

Ashland also joins U.S. Bank in asserting that the fees and costs incurred in connection with the Debtors' failed §303(i)(2) claims must be denied as unreasonable.  But in contrast to U.S. Bank's limited motion, Ashland has moved for summary judgment with respect to all §303(i)(1) costs and attorney's fees that Debtors seek.  It argues that, in light of the failing nature of their businesses, none of the costs and attorney's fees the Debtors incurred in their §303 defense against the involuntary petition were reasonable.

Finally, Ashland argues that even if the court views some attorney's fees and costs as

3

reasonable, the court should grant summary judgment in Ashland's favor.   Ashland asserts that it

played a minimal role in the involuntary proceedings, being substituted in for an original

petitioning creditor six months into the cases.  Ashland also did not take part in many of the legal

skirmishes between U.S. Bank and the Debtors in other fora.  Based on these facts, Ashland urges

the court to exercise its discretion and deny or drastically limit any §303(i)(1) award against

Ashland.

For the reasons stated below, while the scope of the relief available to the Debtors may be

narrower than they request, nevertheless, U.S. Bank's Motion and Ashland's Motion's must be

denied because there are disputed issues of material fact that require trial and fact finding by the

court.


## II.  PROCEDURAL HISTORY

In a prior reported decision, I described in excruciating detail the procedural history of this

long running dispute between the parties.  See In re Nat'l Med. Imaging, LLC, 627 B.R. 73, 84–87

(Bankr. E.D. Pa. 2021).  Here, I will limit the discussion to the procedural history most closely

related to this adversary proceeding.

On November 7, 2008, U.S. Bank's predecessors in interest filed involuntary bankruptcy

petitions against the Debtors and their principal, Maury Rosenberg ("Rosenberg") in this court.

This court transferred the involuntary petition against Rosenberg to the Southern District

of Florida, where it was dismissed.  Thereafter, Rosenberg commenced an adversary proceeding

in the Florida bankruptcy court asserting claims under 11 U.S.C. §303(i).

On December 28, 2009, on motion of the Debtors, this court dismissed the bankruptcy

cases against the Debtors and retained jurisdiction to determine claims under 11 U.S.C. §303(i).

In re Nat'l Med. Imaging, Inc., 439 B.R. 837 (Bankr. E.D. Pa. 2009) (per Fehling, J.).  The order

dismissing the case was affirmed on appeal.  DVI Receivables XIV, LLC v. Nat'l Med. Imaging,

Holding Co., LLC, 529 B.R. 607 (Bankr. E.D. Pa. 2015), aff'd sub nom. Nat'l Med. Imaging,

LLC v. Ashland Funding LLC, 648 F. App'x 251 (3d Cir. 2016).

This court's December 28, 2009 order dismissing the bankruptcy cases set a deadline of

January 4, 2010 for the Debtors to seek relief under 11 U.S.C. §303(i).  They did so by filing a

motion for sanctions on January 4, 2010.

Without going through, in detail, the numerous filings that followed the dismissal of these

bankruptcy cases it is sufficient to say that the court deferred further litigation on the Debtors'

sanctions motion while the Defendants in both Pennsylvania and Florida filed motions for

reconsideration.  (See Bky. No. 08-17351, Doc. #'s 197, 225).  The stay of the sanctions motion

was finally terminated on May 6, 2014.  (Bky. No. 08-17351, Doc. # 280).  The Debtors then

commenced these adversary proceedings on May 27, 2014.[4]

The adversary complaints initially asserted claims under 11 U.S.C. §303(i)(1).  On May

14, 2015, the Debtors amended the complaints to add a claim for damages (both compensatory

and punitive) under §303(i)(2).[5]

_____

[4]      It is not apparent in the record why the Debtors filed the adversary complaints rather than pursuing
the previously filed motion for sanctions.  In its Memorandum, the Debtors suggest that they attempted to
participate in the Rosenberg §303(i) proceeding in Florida but were not permitted to do so.

[5]      Initially, the Debtors brought their §303(i)(1) claim in this court and a §303(i)(2) claim in the
District Court. However, the District Court dismissed the §303(i)(2) claim, holding that §303(i)(2) does not
create an independent cause of action that may be brought directly in the district court. See Nat'l Med.
Imaging, LLC v. U.S. Bank, N.A., 2019 WL 4076768, at *1 (E.D. Pa. Aug. 28, 2019). As explained in the
text, the District Court ended up with the case by withdrawing the reference from the bankruptcy court.

On September 16, 2016, the District Court withdrew the reference of the §303(i)(2) claim (but not the §303(i)(1) claim).  See Nat'l Med. Imaging, LLC v. U.S. Bank, N.A., 2019 WL 4076768, at *3 n.16.  (E.D. Pa. Aug. 28, 2019).

The Defendants filed motions to dismiss the §303(i)(1) claims in this court, which were denied on June 30, 2017.

On August 9, 2017, the bankruptcy court entered an order staying further proceedings in the adversary proceedings pending resolution of the §303(i)(2) claim then pending in the district court. (Adv. No. 14-250, Doc. # 110).

On August 28, 2019, the District Court entered summary judgment in favor of U.S. Bank on the Debtors' §303(i)(2) claims.  See Nat'l Med. Imaging, LLC v. U.S. Bank, N.A., 2019 WL 4076768.

The Debtors appealed the District Court's decision to the Third Circuit.  On August 28, 2020, after the Court of Appeals panel initially affirmed the District Court but then granted rehearing, the panel again affirmed the decision of the District Court.  In re Nat'l Med. Imaging, LLC, 818 F. App'x 129, 130 (3d Cir. 2020).  The Debtors sought Supreme Court review, but their request for a writ of certiorari was denied on March 21, 2021.  Nat'l Med. Imaging, LLC v. U.S. Bank, N.A., 141 S. Ct. 1693 (2021).

On March 26, 2021, this court vacated all prior orders staying these adversary proceedings, (Adv. No. 14-250, Doc. # 120), and, shortly thereafter, entered an order setting pretrial deadlines, (Id., Doc. # 126).  On October 7, 2021, at the request of the parties, certain pretrial deadlines were extended.  (Id., Doc. # 140).

On December 6, 2022, the U.S. Bank Related Defendants filed a motion for partial

summary judgment and Ashland filed a motion for summary judgment, each accompanied by a

supporting memorandum.  Thereafter, the Debtors filed a response to each motion and all the

parties filed further memoranda in support of their respective positions, the last of which was filed

on January 31, 2022.[6]

## III. OTHER RELEVANT FACTS

To put the parties' arguments in context, I need to describe certain other events in their

ongoing dispute and mutually herculean litigation efforts.  This recitation is based largely on the

facts set out in a prior opinion of this court, <u>Nat'l Med. Imaging</u>, 627 B.R. at 85-87.

On May 27, 2015, long after the dismissal of the involuntary cases, by agreement, a final

judgment in favor of U.S. Bank in the amount of $12 million was entered by the Court of Common

Pleas, Buck County, Pennsylvania.  Later in 2015, U.S. Bank transferred the Pennsylvania money

judgment to Florida's 11th Circuit Court, Dade County ("the Fla. Trial Court").

On December 4, 2019, U.S. Bank initiated a supplementary proceeding in the Fla. Trial

Court in the form of a motion ("the Sale Motion"), seeking authority to collect its transferred

judgment by executing against what it termed a "chose in action," specifically, the Debtors'

---

[6]    The Debtors have not yet submitted an application for §303(i)(1) costs and attorney's fees.
Nevertheless, many of the summary judgment arguments raised do not question the compensability of
specific line items in counsel's time records, but rather, assert that Debtors are not entitled to any
reimbursement for entire categories of legal work as a matter of law.

Further, Ashland has submitted evidence (obtained in discovery) detailing the fees and costs
incurred by Debtors that presumably will be submitted at the hearing on this matter.  Debtors have not
disputed Ashland's characterization of this particular evidence.

pending §303(i)(2) claim.[7]  The Debtors opposed the Sale Motion in the Fla. Trial Court.

On April 28, 2020, the Fla. Trial Court entered an order granting the Sale Motion ("the Fla. Order").  The Debtors appealed the Fla. Order, but their efforts to obtain a stay pending appeal was denied by the Fla. Trial Court and the Florida District Court of Appeals.  The Debtors also sought a stay in the Third Circuit, but that request, too, was denied.

The sale of the Debtors' §303(i)(1) claim, scheduled for June 15, 2020 was stayed by the filing of the Debtors' two (2) bankruptcy cases on June 12, 2020.

On July 20, 2020, the Debtors commenced an adversary proceeding in this court seeking a declaratory judgment that, inter alia,  U.S. Bank may not set off its judgments against the Debtors recovery under 11 U.S.C. §303(i) or take any other action to interfere with the Debtors' prosecution of the §303(i) claims.  In the Complaint, the Debtors also requested a determination regarding the extent, priority and validity of U.S. Bank's liens on property of the bankruptcy estates, equitable subordination of U.S. Bank's claims and attorney's fees under 11 U.S.C. §303(i)(1).  By order dated February 21, 2021, on U.S. Bank's motion, I dismissed most of the claims, some with prejudice, some without prejudice.  The primary remaining claim in the adversary proceeding after entry of the February 21, 2021 dismissal order was the Debtors' request for declaratory relief.

On October 8, 2021, I entered an order granting the Debtors' motion for summary judgment with respect to the Debtors' request for declaratory relief.  The order declared that U.S. Bank may not set off its judgments against the Debtors recovery under 11 U.S.C. §303(i)(1) or employ its

---

[7]      When U.S. Bank commenced this supplementary proceeding, the district court in the Eastern District of Pennsylvania had already decided the §303(i)(2) claim in U.S. Bank's favor and the Debtors' appeal was pending in the Third Circuit.

judgment to execute against the Debtors' §303(i)(1) claims.  (Adv. No. 20-219, Doc. # 45).[8]

## IV. SUMMARY JUDGMENT STANDARD

The legal standards for evaluating the merits of a motion for summary judgment under Fed.

R. Civ. P. 56 (incorporated by Fed. R. Bankr. P. 7056) are well known.

Summary judgment is appropriate only when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In other words, summary judgment may be entered if there are no disputed issues of material fact and the undisputed facts would require a directed verdict in favor of the movant.

In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial.  A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. In evaluating the record, the court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing. On the other hand, if it appears that the evidence is so one-sided that one party must prevail as a matter of law, the court should enter judgment in that party's favor.

Proper resolution of a motion for summary judgment also requires consideration of the parties' respective burdens.

As a threshold matter, the moving party's initial burden is to demonstrate that there are no disputed issues of material fact. How the movant meets this burden and how the respondent may rebut the movant's showing is affected by the allocation of the evidentiary burden of persuasion if the dispute were to proceed to trial.

If the moving party bears the burden of proof, the movant must support its motion with credible evidence… that would entitle it to a directed verdict if not controverted at trial.  The evidence must establish all the essential elements of its case on which it bears the burden of proof at trial, such no reasonable jury could

---

[8]    The order referenced §303(i) generally rather than §303(i)(1) specifically.  There was no reference to §303(i)(2) because, when the order was entered, the Supreme Court had already denied *certiorari* and the judgment in U.S. Bank's favor on the Debtors' §303(i)(2) claim was final.

find for the non-moving party. If the movant (with the burden of proof at trial) meets this initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial.

If the moving party does ***not*** bear the burden of proof at trial, the analysis is more complicated. The movant must still demonstrate the absence of a disputed issue of material fact, but an entitlement to judgment in its favor may be established in either of two (2) ways.

First, and most simply, if the movant (who does not bear the burden of proof) presents evidence establishing that the undisputed facts negate at least one (1) element of the respondent's claim, the movant is entitled to summary judgment.

Alternatively, the movant may obtain summary judgment by demonstrating that the responding party (with the burden of proof at trial) lacks evidence to support an essential element of its claim.

E.g., In re Lee, 639 B.R. 140, 145–46 (Bankr. E.D. Pa. 2022) (numerous citations and quotations omitted) (emphasis in original).

## V.  ATTORNEY'S FEES: GENERAL LEGAL PRINCIPLES

### A.  Attorney's Fees under §303(i)(1)

Section 303(i) authorizes a court to awards fees, costs, and/or damages against a petitioning creditor upon the dismissal of an involuntary petition.  It provides:

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

11 U.S.C. §303(i).

The basic operation of §303(i) is well understood.  To obtain judgment against a petitioning creditor under §303(i), a putative debtor must satisfy three (3) requirements: (1) the court must have dismissed the involuntary petition; (2) the dismissal must be other than on consent of all petitioners and the debtor; and (3) the debtor must not have waived the right to a §303(i) claim.  In re R. Eric Peterson Const. Co., Inc., 951 F.2d 1175, 1179 (10th Cir. 1991); In re Express Car & Truck Rental, Inc., 440 B.R. 422, 430 (Bankr. E.D. Pa. 2010).[9]

Bad faith on the part of the petitioning creditors is not necessary for the court to award costs and attorney's fees.  In re Bayshore Wire Prod. Corp., 209 F.3d 100, 105 (2d Cir. 2000).  By contrast, an award of consequential and/or punitive damages under §303(i)(2) may be granted only upon a showing of such bad faith.  Id.

Section 303(i) states that "the court *may* grant judgment" if the applicable statutory prerequisites are met.  (emphasis added).  Thus, awards of any kind under §303(i) are committed to the discretion of the court.  In re Reid, 854 F.2d 156, 159 (7th Cir. 1988); In re Skyworks Ventures, Inc., 431 B.R. 573, 576 (Bankr. D.N.J. 2010).  However, "courts exercise their discretion in light of" factors supporting an expectation that petitioning creditors will pay the putative debtor's fees and costs if the case is dismissed.  In re Kidwell, 158 B.R. 203, 217 (Bankr. E.D. Cal. 1993).

In other words, a majority of courts have held that there is a rebuttable presumption in favor

---

[9]    Some courts merge the first two (2) §303(i) requirements in their discussions, i.e., stating, the court must dismiss the petition other than by consent.  See, e.g., In re Rosenberg, 779 F.3d 1254, 1264 (11th Cir. 2015).

of awarding costs and reasonable attorney's fees under §303(i)(1).  See, e.g., In re Squillante, 259

B.R. 548, 553-54 (Bankr. D. Conn. 2001) (citing In re Ross, 135 B.R. 230, 238 (Bankr. E.D. Pa.

1991)); see also Express Car & Truck Rental, 440 B.R. at 430-35.

The bankruptcy court's discretion includes the ability to allocate liability for §303(i) awards

among the petitioning creditors based on the totality of the circumstances.  In re Maple-Whitworth,

556 F.3d 742, 746 (9th Cir.), opinion corrected sub nom, In re Maple-Whitworth, Inc., 559 F.3d

917 (9th Cir. 2009).  The court may hold petitioning creditors jointly and severally liable, apportion

liability in relation to each creditor's conduct, or deny an award against some or all creditors.  Id.;

In re Anmuth Holdings LLC, 600 B.R. 168, 205 (Bankr. E.D.N.Y. 2019).

A court's determination of whether requested fees are reasonable "should not result in a

second major litigation."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  "The essential goal in

shifting fees . . . is to do rough justice, not to achieve auditing perfection."  Fox v. Vice, 563 U.S.

826, 838 (2011).  A bankruptcy judge "may take into account his overall sense of a suit, and may

use estimates in calculating and allocating an attorney's time."  Id.

## B. Hensley v. Eckerhart

The seminal Supreme Court case that guides the court's inquiry in determining the

"reasonableness" of attorney's fees requested under a fee-shifting statute is Hensley v. Eckerhart.

In Hensley, the Court interpreted the federal civil rights fee-shifting statute at 42 U.S.C.

§1988.  Like the fee-shifting provision at §303(i)(1), 42 U.S.C. §1988(b) provides that a court

"may allow" an award of a "reasonable attorney's fee" to the prevailing party in certain types of

civil rights litigation.

Hensley established the well-known lodestar formula for determining an amount of a

"reasonable fee" under federal fee-shifting statutes: "the number of hours reasonably expended on

the litigation multiplied by a reasonable hourly rate." Id. at 433; see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546 (2010). The lodestar may be adjusted up or down based on a host of factors, including the "most critical factor" — "the degree of success obtained." Hensley, 461 U.S. at 434-36.

The degree of litigation success is "particularly crucial" where a plaintiff has succeeded "on only some of his claims for relief." Id. at 434. In such cases, the court must determine whether the plaintiff's unsuccessful claims are related to the successful claims.

Hensley supplies guidance for a court's resolution of this issue. Related claims will generally "involve a common core of facts or will be based on related legal theories." Id. at 435. A counsel's work on related claims "will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id.

Conversely, unrelated claims "are based on different facts and legal theories." Id. at 434. Where work on a particular claim did not contribute to the successful outcome of a different claim, those claims are unrelated.[10] Id. at 434-35.

The relatedness of successful to unsuccessful claims dictates whether a court can award any fees for work expended on unsuccessful claims. If unrelated to a successful claim, a counsel's efforts on an unsuccessful claim "cannot be deemed to have been expended in pursuit of the ultimate result achieved." Id. at 435 (quotations omitted). No fees may therefore be awarded for work on such unrelated and unsuccessful claims. Id.; McKenna v. City of Phila., 582 F.3d 447, 457 (3d Cir. 2009). The court should treat such unrelated claims "as if they had been raised in separate lawsuits." Hensley, 461 U.S. at 435; see also Smith v. Borough of Dunmore, 633 F.3d

---

[10]    "Establishing relatedness on a claim-by-claim basis in the attorneys' fees context is a fact-intensive determination that rightfully belongs within the District Court's discretion. . . ." McKenna, 582 F.3d at 458 (citing Hensley, 461 U.S. at 437).

176, 184 (3d Cir. 2011) (affirming denial of fees for unsuccessful claims that were entirely distinct from the sole successful claim).

Successful lawsuits involving related — but unsuccessful — claims require a different approach.   Such a lawsuit cannot be viewed as a series of discreet claims.  Hensley, 461 U.S. at 435.  In such cases, a court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  Id.

Where the lawsuit as a whole has produced "excellent results," a court should award a fully compensatory fee.  A plaintiff's fee request should not be reduced simply because the plaintiff failed to prevail on every claim.  Id.

Lawsuits resulting in only "partial or limited success," however, may justify a reduction of the lodestar amount.  Id. at 435-36.  Given the vast range of possible outcomes, a plaintiff's success on a discreet claim "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."  Id. at 436.  For instance, success on one (1) of six (6) general claims resulting in only partial relief could make a fee award for all hours expended in the litigation excessive.

In this arena, "[t]here is no precise rule or formula" for a court to follow."  Id.  "The court necessarily has discretion in making this equitable judgment."  Id. at 437.  And of course it bears repeating that the adjudication of fee requests "should not result in a second major litigation."  Id.

## VI.  APPLICATION OF THE PRESUMPTION IN FAVOR OF AN AWARD OF FEES AND COSTS UNDER §303(i)(1) AT THE SUMMARY JUDGMENT STAGE

Initially, the parties tangle over the applicability, scope and timing of the so-called "presumption" in favor of an award of fees and costs.  A brief discussion is necessary to resolve these "presumption" issues.

There is consensus among bankruptcy courts that the court should consider the totality of the circumstances in exercising its discretion to award fees and costs under §303(i)(1). E.g., In re Diloreto, 388 B.R. 637, 647 (Bankr. E.D. Pa. 2008), aff'd, 442 B.R. 373 (E.D. Pa. 2010) (citing Higgins v. Vortex Fishing Sys., Inc., 379 F.3d 701, 706 (9th Cir. 2004)). Courts differ in their opinions, however, regarding the applicable evidentiary burdens. Id.; Richard Levin & Henry J. Sommer, 2 Collier on Bankruptcy ¶ 303.33[3] (16th ed. 2022) ("Collier").

Previously, I joined the majority of courts in holding that there is a rebuttable presumption in favor of awarding costs and reasonable attorney's fees. In re Express Car & Truck Rental, 440 B.R. at 432-35 (citing In re Skyworks Ventures, Inc., 431 B.R. at 576). Courts justify this approach based on policy grounds, the text of §303(i), and pre-Code practice. See, e.g., Higgins, 379 F.3d at 707 (because of the deleterious effects that involuntary filings cause for putative debtors, the presumption discourages inappropriate and frivolous filings); Kidwell, 158 B.R. at 217 (presumption grounded in the fact that §303(i)(1) does not condition an award of fees and costs on any action of petitioning creditors other than filing itself); see also In re Macke Int'l Trade, Inc., 370 B.R. 236, 250 (B.A.P. 9th Cir. 2007).

It is the petitioning creditor's burden to rebut the presumption. Express Car & Truck Rental, 440 B.R. at 432. The creditor can avoid liability for costs and attorney's fees by demonstrating that the totality of the circumstances warrants a denial of a putative debtor's requested award. Id. Factors relevant to this determination include:

1. the merits of the involuntary petition;

2. the reasonableness of the actions of the petitioning creditors;

3. the motivation and objectives behind the filing of the petition; and

4. any improper behavior by the debtor.

Id.; Maple-Whitworth, 556 F.3d at 746; In re S. California Sunbelt Devs., Inc., 608 F.3d 456, 462

15

(9th Cir. 2010); Express Car & Truck Rental, 440 B.R. at 432; Diloreto, 388 B.R. at 647-48.

If the petitioning creditor fails to rebut the presumption in favor of awarding fees and costs under §303(i)(1), the putative debtor still bears the burden of demonstrating the reasonableness of the amount of the requested fees.  Express Car & Truck Rental, 440 B.R. at 432 (citing Diloreto, 388 B.R. at 647).

Here, the Debtors assert that all fees and costs incurred in both the "defensive" and "offensive" phases of §303(i) litigation should be subject to the presumption because they successfully obtained dismissal of the involuntary petitions filed against them.[11] The Defendants counter that the presumption should not apply to fees and costs incurred in offensive litigation, such as prosecuting failed §303(i)(2) claims and the other collateral litigation.[12]  The Defendants do not raise this issue as to the defensive aspects of the §303(i) litigation.

These arguments place undue emphasis on the presumption.  The presumption merely operates at the court's threshold determination as to whether fees and costs will be shifted at all.  It does not apply discretely to each individual category of fees and costs requested by a §303(i) plaintiff.  If the court determines, under the totality of the circumstances, that an award of

---

[11]    I use the term "defensive" to refer to the fees and costs incurred in the dismissal of the involuntary petition and  defense of the dismissal order in the bankruptcy court and on appeal.  I use the term "offensive" to refer to the fees and costs incurred in prosecuting the Debtors' entitlement to fees and costs under §303(i), their pursuit of compensatory and punitive damages, as well as in other litigation in both federal and state court that the Debtors' maintain were necessary to protect the viability and effectiveness of their right to fees and costs under §303(i).

[12]    U.S. Bank has not moved for summary judgment with respect to the threshold issue — whether the court should grant fees and costs to the Debtors at all.  That issue will remain for trial where U.S. Bank may attempt to rebut the presumption by demonstrating that no award of fees and costs is justified.  If the Defendants attempt to demonstrate at trial that, based on the totality of the circumstances, no award of attorney's fees is warranted, the presumption may still play a live role in this adversary proceeding — just not with respect to these motions for summary judgment.

§303(i)(1) fees and costs is warranted, the court must then determine whether the fees and costs

requested are related to the §303(i) action and whether the attorney's fees are "reasonable." The

presumption plays no role in those later analyses. That said, I agree with the Debtors that a fee

award under §303(i)(1) will be "a single fee award presumably covering the entire [§303(i)]

action." See S. California Sunbelt Devs., 608 F.3d at 462.[13]


## VII.   THE DEBTORS' ATTORNEY'S FEES INCURRED IN CONNECTION WITH LITIGATION OF THE §303(i)(2) CLAIM

### A.   Introduction

Next, I consider the various categories of legal services for which the Defendants contend

are not compensable under 11 U.S.C. §303(i)(1) as a matter of law.

The first category of challenged costs and attorney's fees are those that the Debtors incurred

in pursuit of their unsuccessful §303(i)(2) claims.[14]

The Defendants' motions on this topic require the court to address three (3) distinct

---

[13]     Ashland argues it is entitled to summary judgment because the presumption has been rebutted based on the totality of the circumstances (more specifically, what it characterizes as the Debtors' unreasonable pre-petition conduct designed to prop up an obviously failing business) and, therefore, it should not liable at all under §303(i)(1). I disagree and conclude, with little difficulty, that the issue is not ripe for summary judgment. The issue is best determined after I have a complete record, at trial, on the totality of circumstances, after which I will be in a position to make determinations regard both "historical" facts and mixed fact-law questions.[13] Accordingly, at this summary judgment stage, the presumption does not apply to the various categories of challenged fees and costs the Debtors request.


[14]     The Plaintiffs are correct in pointing out that law of the case arguably could apply here. See In re Island View Crossing II, L.P., 604 B.R. 181, 193-94 (Bankr. E.D. Pa. 2019) (explaining that law of the case is a discretionary doctrine designed to maintain consistency and avoid reconsideration of matters decided during the course of a single lawsuit).  In Judge Fehling's June 30, 2017 Opinion, he agreed with the Eleventh Circuit's ruling in Rosenberg, 779 F.3d 1254 and concluded that §303(i)(1) gave courts the discretion to award fees and costs incurred in prosecuting the §303(i)(2) claims. See In re Nat'l Med. Imaging, LLC, 570 B.R. 147, 160-61 (Bankr. E.D. Pa. 2017). Nevertheless, in light of the partially discretionary nature of the doctrine and the parties' penchant for appeal, I consider it prudent to analyze the issue for the benefit of the parties and the appellate courts.

questions.  These questions are stated below, accompanied by my answers to those questions:

1.  As a threshold issue, does §303(i)(1) permit a court to award to a putative debtor any fees incurred in pursuit of §303(i)(2) claims:  **Yes**.

2.  Does the American Rule require that a putative debtor be successful in its §303(i)(2) claims before a court may award such fees:  **No**.

3.  On the undisputed material facts of this case, should the Plaintiffs' requests for §303(i)(2) fees be denied as unreasonable as a matter of law on summary judgment:  **No**.

As elaborated below, the first two (2) issues do not mandate the legal conclusion that the

Debtors' claim for attorney's fees incurred in the unsuccessful §303(i)(2) action is *per se* without

merit.

As for the third issue, the summary judgment record does not establish, as a matter of law,

that all of the fees requested in connection with the §303(i)(2) litigation are unreasonable.  Rather,

the Debtors may be able to establish based on a full trial record that they are entitled to an award of

at least some portion of those fees.

## B.  §303(i)(1) Permits a Court to Award Attorney's Fees Incurred In Pursuit of §303(i)(2) Claims

To determine whether putative debtors can recover costs and attorney's fees incurred in

pursuit of §303(i)(2) claims,  I look first to the statutory text in 11 U.S.C. §303(i)(1),  The language

and structure of §303(i) do not provide a clear answer to this question.

At first blush, §303(i)(1) is straightforward.  It establishes only three (3) requirements for a

putative debtor to obtain a judgment for costs and attorney's fees: (1) success in obtaining a

dismissal of an involuntary petition; (2) obtained other than on consent of all petitioners and the

debtor  and (2) the absence of a waiver of the debtor's claim for costs and attorney's fees.  See 11

U.S.C. §§303(i)(1).  But the provision  does not explicitly state whether a court can award fees and

costs for proceedings related, but collateral, to dismissal of involuntary petitions.

Section 303(i)(2) permits the court to award consequential and punitive damages against petitioners who filed in bad faith, but is silent regarding the availability of costs and attorney's fees incurred for litigating such claims. The addition of subsection (i)(2) arguably contributes to the lack of clarity as to the scope of §303(i)(1).

How should the costs and attorney's fees provisions in subsection (i)(1) be read in light of (i)(2)?  An "exclusive reading" of subsections (i)(1) and (i)(2) would cabin allowable fees to those incurred during the "defensive" phase of the §303 litigation; i.e., in securing dismissal of the involuntary petition.  See In re Rosenberg, 779 F.3d 1254, 1266-67 (11th Cir. 2015).  On the other hand, an inclusive, holistic reading of these two (2) subsections would also permit an award of fees incurred in §303(i)(2) litigation, i.e., fees incurred in prosecuting an entitlement to consequential and punitive damages.  See id.

The overwhelming majority of courts that addressed this issue conclude that an award of fees under §303(i)(1) can encompass fees incurred in "all phases" of §303(i) litigation, including litigation under §303(i)(2).  See In re Anmuth Holdings, 600 B.R. at 168, 187-88 (collecting cases). Courts have set forth various justifications for this holding.

One court focused on the general rule of statutory interpretation that "statutes must be construed as a whole" to reach this conclusion.  See In re Glannon, 245 B.R. 882, 894 (D. Kan. 2000).  The Glannon court noted that §303(i)(1) allowed putative debtors to recover costs, while (i)(2) made no mention of costs.  However, the "general rule" is (and has been) that a prevailing party may recover costs for bankruptcy proceedings.  Id. (citing Federal Rules of Bankruptcy Procedure 7054(b).[15]

---

[15]    The Federal Rules of Bankruptcy Procedure at Part VII, which includes Fed. R. Bankr. P. 7054, govern adversary proceedings.  See Fed. R. Bankr. P. 7001.  Under Fed. R. Bankr. P. 1018, Fed. R. Bankr. P. 7054 also applies to proceedings in which a putative debtor contests an involuntary petition.

The <u>Glannon</u> court observed that if the costs provision at §303(i)(1)(A) were limited to the defensive phase of the litigation, "illogical" results ensued. <u>Id.</u> The court reasoned:

> Because the general rule is that a prevailing party may recover costs for the entire bankruptcy proceeding, <u>see</u> Fed. R. Bankr. P. 7054(b), the court finds it illogical to construe § 303(i)(1) as either merely partially redundant or as somehow limiting an award of costs to only those costs incurred in the dismissal phase of the proceeding. The drafters surely meant that costs (e.g., witness fees, recoverable deposition expenses, and the like) were, of course, recoverable under § 303(i) without drawing a distinction between the defensive phase, in securing dismissal, or in the offensive phase, in being made whole where there was bad faith. In construing the statute as a whole, then, the court concludes that an award of attorney's fees, also only mentioned in § 303(i)(1), similarly was intended to be available for fees incurred throughout the entire action. The identical treatment of costs and attorney's fees in the section seems to dictate the result.

245 B.R. at 894; <u>accord</u> <u>Rosenberg</u>, 779 F.3d at 1267 (adopting <u>Glannon's</u> "persuasive reading" of §303(i)(1)).[16]

Another court took an historical approach. In <u>In re Landmark Distributors, Inc.</u>, a New Jersey bankruptcy court justified awarding the cost of litigating the proceeding under § 303(i)(2) (as well as the dismissal aspect of the proceeding under §303(i)(1)) after reviewing the history of the development of the law under §303(i) since the Bankruptcy Act of 1898 (as first detailed in <u>In re Eastern Erectors, Inc.</u>, 396 F. Supp. 797, 801 (E.D. Pa. 1975)). <u>See</u> <u>In re Landmark Distributors, Inc.</u>, 195 B.R. 837, 847 (Bankr. D.N.J.1996) (citing <u>Eastern Erectors</u>, 396 F. Supp. at 801 (collecting cases)); <u>see also</u> <u>Ross</u>, 135 B.R. at 236 n.4 (observing that the exception was "grounded in general jurisprudential principles not unique to bankruptcy law").

According to <u>Eastern Erectors</u> and <u>Ross</u>, prior to the enactment of §303(i), federal courts recognized — as an exception to the American Rule — the equitable power of federal courts to

---

[16]    The <u>Glannon</u> court emphasized that the statutory basis for awarding fees for (i)(2) litigation was grounded in the attorney's fee provision at §303(i)(1)(B). Consistent with the American Rule, such fees would ordinarily not be available to putative debtors as "damages" proximately caused by a bad faith filing. <u>Glannon</u>, 245 B.R. at 894 n.17.

award fees as a punitive measure when the losing party had acted in bad faith. Landmark

Distributors, 195 B.R. at 847. This exception was applied generally in bankruptcy cases. Id.

Landmark Distributors also highlighted the legislative history of §303(i)(1), which

provides:

> In addition, if a petitioning creditor filed the petition in bad faith, the court may
> award the debtor any damages proximately caused by the filing of the petition.

195 B.R. at 84 (quoting H. Rep. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977)

pp. 321–324 (emphasis added in original)). Against this historical background, Landmark

Distributors concluded that §303(i)(1) permitted an award of attorney's fees for successful (i)(2)

litigation. See 195 B.R. at 847 (noting the "ample evidence" of bad faith justifying the award of

fees).

I agree with the majority view that §303(i)(1) permits a court to award costs and attorney's

fees incurred in pursuit of §303(i)(2) claims.  I am most persuaded by the statutory construction

analysis set forth in Glannon, 245 B.R. at 894.

As explained in Glannon, the more sensible interpretation of the statute is that

§303(i)(1)(A) permits an award of costs for all phases of the §303(i) litigation.  The drafter's

failure to insert a duplicative costs provision in §303(i)(2) does not indicate that such costs are not

awardable.  Rather, §303(i) sets forth that the requirements for costs to be awarded for both

dismissal work and (i)(2) litigation (i.e., that the involuntary petition was dismissed other than on

consent of all of the petitioners and the debtor has not waived its rights to judgment under §303(i)).

As the Glannon court reasoned, the attorney's fees provision — also only mentioned in

§303(i)(1) but not §303(i)(2) — should be given the same effect as the costs provision.  Once

eligibility to an award of such fees has been established, a court may award reasonable fees under

both §303(i)(1) and §303(i)(2).[17]

This conclusion is buttressed by consideration of pre-Code practice. At the time Congress

enacted §303(i) in 1978, the governing bankruptcy rules permitted involuntary debtors to recover

costs and attorney's fees incurred in obtaining dismissal of involuntary petitions. Ross, 135 B.R. at

235-36 (explaining the history of cost-recovery provisions from the Bankruptcy Act of 1898 to

passage of the Bankruptcy Code in 1978). The power to award attorney's fees in cases of bad faith

---

[17]    Some courts reaching this conclusion have relied in part upon perceived legislative intent derived
from the text of the statute. For example, In re John Richards Homes Bldg. Co., 552 F. App'x 401, 408 (6th
Cir. 2013), the court opined that §303(i) exhibits the "plain intent of Congress to provide a complete remedy
for debtors who successfully defend against an involuntary petition"); see also Anmuth Holdings, 600 B.R.
at 188 (limiting allowable fees to those incurred in the dismissal phase "would undermine the purpose and
intent of §303(i)(1)"); Landmark Distributors, Inc., 195 B.R. at 846 (denial of fees for successful (i)(2)
litigation would "fly in the face of legislative intent and common sense"); In re Ramsden, 17 B.R. 59, 61
(Bankr. N.D. Ga. 1981) (opining in dictum that legislative history shows the "[c]osts and reasonable
attorney's fees listed in §303(i)(1) are clearly included within the (i)(2)(A) damages proximately caused by
the filing").

I question whether the legislative intent can so inferred so easily from the text of the statute. The
suggestion in John Richards Homes, 552 F. App'x at 408, that Congress intended §303(i) as a "complete
remedy" is presumed, not demonstrated. Indeed, it would seem otherwise. Consequential damages are
unavailable unless the petitioning creditors acted in bad faith. Section 303(i) therefore dictates that damages
(other than legal expenses) inflicted upon involuntary debtors by good faith filings must be borne by the
putative debtors. Diloreto, 388 B.R. at 645, aff'd, 442 B.R. 373 (E.D. Pa. 2010).

Other courts have attempted to glean legislative intent from legislative history.

Landmark Distributors quoted from the House Report to the Bankruptcy Reform Act of 1978: "In
addition, if a petitioning creditor filed the petition in bad faith, the court may award the debtor any damages
proximately caused by the filing of the petition." Landmark Distributors, 195 B.R. at 847 (emphasis added)
(quoting H.Rept. No. 95–595, 95th Cong., 1st Sess. (1977), at 321-324); see also Ramsden, 17 B.R. at 61
(citing the same House Report).

This, too, is questionable. As noted by the Glannon court, counsel fees are generally not
recoverable as "damages." Glannon, 245 B.R. at 894 n.17 (citing Fleischmann Distilling Corp. v. Maier
Brewing Co., 386 U.S. 714, 717 (1967)). Thus, it would be unwarranted to read a fee-shifting intent based
merely on this reference to "damages" in the legislative history.

Nevertheless, in construing §303(i), I reach the same result as these courts for other reasons, as
stated above in the text.

— including bankruptcy cases — was grounded in the federal court's equitable power to award fees as punitive and deterrent measures.  See In re E. Erectors, Inc., 396 F. Supp. 797, 801 (E.D. Pa. 1975) (citing Hall v. Cole, 412 U.S. 1, 4 (1973)); accord  In re Howard, Neilsen & Rush, Inc., 2 B.R. 451, 454 (Bankr. M.D. Tenn. 1979).

Thus, in enacting §303(i)(1), Congress likely intended to codify the existing practice regarding a putative debtor's ability to recover costs and attorney's fees in dismissed involuntary cases.  In re Ross, 135 B.R. at 236; see also Dewsnup v. Timm, 502 U.S. 410, 419 (1992) (recognizing that Congress had "enacted the Code with a full understanding" of established pre-Code practices).  Without at least some indication that Congress intended to effect a "major change in pre-Code practice," it is reasonable for courts to presume otherwise.  Dewsnup, 502 U.S. at 419; see also Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019) (citing Hall v. Hall, 138 S.Ct. 1118, 1128 (2018)) (statutory terms "obviously transplanted from another legal source" bring the "old soil" of existing governing principles with them).

Interpreting the attorney's fee provision at §303(i)(1) as not allowing an award of fees for §303(i)(2) litigation — even in cases of demonstrable bad faith — would contradict the well-recognized bad-faith exception to the American Rule in federal courts.  See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).  Again, there is no indication that Congress intended such a result.

On balance, therefore, I am persuaded that Congress intended §303(i) to allow costs and reasonable attorney's fees to be shifted to petitioning creditors for all phases of §303(i) litigation. This includes costs and attorney's fees incurred in pursuit of §303(i)(2) claims.[18]

---

[18]    In so holding, I recognize the legitimate premise advanced by U.S. Bank that the American Rule requires a narrow construction of attorney's fee statutes.  See Peter v. Nantkwest, Inc., 140 S. Ct. 365, 370-71 (2019) (affirming that the American Rule embodies a presumption against fee shifting); Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 602 (2001) (under the American rule, courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority"); Peer v. Liberty Life Assur. Co. of Bos., 992 F.3d 1258, 1262 (11th Cir. 2021) (the American

### C. The American Rule Does Not Require that a Putative Debtor Be Successful In Its §303(i)(2) Claims Before A Court May Award Counsel Fees Under §303(i)(1)

The overwhelming majority of courts that have addressed the issue of compensability of fees incurred during §303(i)(2) litigation have awarded such fees. E.g., Anmuth Holdings, 600 B.R. at 187-88. These cases generally involved fee petitions for *successful* §303(i)(2) claims. In the case sub judice, the Plaintiffs failed to establish entitlement to any consequential or punitive damages. Thus, this case involves the question of whether a plaintiff can recover attorney's fees and costs for *unsuccessful* §303(i)(2) claims.

The Defendants argue that the American Rule requires an interpretation of §303(i)(1) that does not permit a putative debtor to recover fees incurred for *unsuccessful* §303(i)(2) claims. I am not persuaded that the American Rule requires an interpretation of §303(i)(1) that imposes an absolute bar to recovery of fees for unsuccessful §303(i)(2) claims.

Cases applying the American Rule to fee-shifting statutes form the basis of the moving Defendants arguments. The Defendants correctly note that, when interpreting fee-shifting statutes, courts look to the American Rule as the "basic point of reference." See Ruckelshaus v. Sierra Club, 463 U.S. 680, 683-84 (1983) (citing Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 247 (1975)). Under the American Rule, it is well known that "even the *prevailing* litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the *loser.*" Id. (quotations omitted) (emphasis in original).

---

rule means courts "read fee-shifting statutes strictly"). Thus, U.S. Bank urges application of this principle of statutory construction to restrict §303(i) as limiting attorney's fees to those incurred under subsection (i)(1). However, for the reasons explained, I conclude that §303(i)(1) provides the requisite "explicit statutory authority" to overcome the American Rule's presumption against fee shifting. The better interpretation of §303(i)(1) is that it permits a court to award reasonable attorney's fees incurred by a putative debtor in §303(i)(2) litigation, subject to the factors guiding the exercise of its discretion.

Unsurprisingly, nearly all federal fee-shifting statutes predicate fee awards on some degree of success by the claimant.  Id.  As the Supreme Court summed it up, "[fee-shifting statutes] reflect one consistent, established rule: a successful party need not pay its unsuccessful adversary's fees." Id. at 685.  Accordingly, for a court to interpret a fee-shifting statute in a manner that mandates winners pay the losers' fees, "a clear showing that this result was intended is required."  Id.; see also Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-55 (2010) (holding that a fee-shifting statute required a party to show "some degree of success on the merits" before a court could award fees, despite the absence of any success-based requirements in the statute).

Applying these interpretive principles, the moving Defendants argue that §303(i)(1) does not provide the requisite specificity to override the default American Rule presumption against forcing winners to pay for losers' fees.  I might agree with the Defendants if §303(i) did not impose a success-based requirement upon claimants seeking fees incurred in pursuit of §303(i)(2) claims. But it does.

As previously explained, §303(i) includes a success-based requirement: success in obtaining a non-consensual dismissal of the involuntary petition.  See S. California Sunbelt Devs, 608 F.3d at 462 ("Fee eligibility is therefore inextricably linked to the [involuntary dismissal] proceedings' dispositive adjudication.").  Once this requirement (and the other requirements: the dismissal being nonconsensual and the absence of a waiver) are satisfied, a court may award reasonable fees.  And as I have concluded, these fees can encompass work performed in all phases of the §303(i) litigation.

Thus, the only "success" required by §303(i) before an award of fees can be granted for any part of the §303(i) litigation — including (i)(2) claims — is the dismissal of the involuntary petition.  Having established eligibility for an award of attorney's fees under §303(i)(1)(B), a putative debtor then need only show that such fees are reasonable and convince a court to exercise

25

its discretion to grant its request.  An imposition of additional success-based criteria for putative

debtors seeking fees for §303(i)(2) litigation is unwarranted by the text of the statute.

This is not to suggest that a plaintiff's success (or lack thereof) in its §303(i)(2) claim does

not play a role in the court's discretion to award fees.  It does — just not as a threshold eligibility

determination.

Rather than the rigid rule suggested by the Defendants, the proper standard was expressed

in S. California Sunbelt Devs., 608 F.3d 456.  The California Sunbelt court correctly noted that

"eligibility for fees turns on the merits of the [dismissal] litigation."  Id. at 462.  Thus, "[w]hen a

petition is dismissed, a court may grant a debtor 'a reasonable attorney's fee'—a single fee award

presumably covering the entire action."  Id. (quoting §303(i)(1)).  In other words, dismissal of the

involuntary petition is the sole trigger for fee eligibility under §303(i)(1).  Id.

This approach is consonant with the Supreme Court's holding in Comm'r, I.N.S. v. Jean,

496 U.S. 154 (1990).

In Jean, the Court held that the fee-shifting statute in the Equal Access to Justice Act

(EAJA) should be read as providing for a "one-time threshold for fee eligibility."  Id. at 159-60.  In

salient part, the EAJA statute provided that fees could be awarded to prevailing parties, unless the

court found that "the position of the United States was substantially justified."  Id. at 158 (quoting

28 U.S.C. §2412(d)(1)(A)).  The petitioner argued that this statute required separate inquiries into

the justification of the United States' positions; once at the trial level and again at the appellate

level.  Id. at 158-59.  In rejecting this argument, the court stated that the EAJA fee-shifting statute,

"like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as

atomized line-items."  Id. at 161-62.  Once a claimant had met the "multiple conditions for

eligibility," the district court's remaining task was to determine "what fee is reasonable."  Id. at 161

(citing Hensley, 461 U.S. at 433-37).

Jean and California Sunbelt are on point here.  If accepted, the moving Defendants' position would break Plaintiffs' §303(i)(1) attorney's fee request into "line-items" and require multiple determinations of fee eligibility.  Id.  Neither the text nor structure of §303(i)(1) justifies such an approach.

A putative debtor becomes eligible to costs and a reasonable attorney's fee through §303(i)(1).  Subsection (i)(2) provides for additional recovery of consequential and punitive damages in cases of bad faith.  Since the debtor has already established eligibility to attorney's fees through (i)(1), no further threshold showing of success is necessary to make a debtor eligible to recover fees incurred in the (i)(2) litigation.  Such fees are ***potentially compensable***, subject to the court's discretion and the requirement of reasonableness.  See Jean, 496 U.S. at 160-61 (quoting Hensley, 461 U.S. at 433) (the eligibility determination "brings the plaintiff only across the statutory threshold.  It remains for the . . . court to determine what fee is 'reasonable.'").

In sum, I find that the American Rule does not mandate reading into §303(i)(1) an eligibility requirement of (i)(2) litigation success before a court can award the costs and reasonable attorney's fees incurred for such litigation.

### D. The Debtors' Unsuccessful §303(i)(2) Claim May Be Sufficiently Related to the Meritorious §303(i)(1) Claim to Warrant an Award of Some Attorney's Fees Incurred in the §303(i)(2) Litigation

### 1.

The last step in this inquiry is to determine whether the unsuccessful §303(i)(2) claim is "related" to the §303(i)(1) claim.  If so, attorney time spent on the §303(i)(2) claim may be compensable, (subject to the application of the legal principle from Hensley —that lawsuits resulting in only "partial or limited success" justify a reduction of the lodestar amount, Hensley, 461 U.S. at 435-36)).  If not, the Debtors' attorney's fees will not be compensable.  Id. at 435;

McKenna, 582 F.3d at 457.

I conclude that the Debtors' §303(i)(2) claim bears a sufficient nexus to the §303(i)(1)

claim and therefore should be analyzed as a related claim under Hensley.


## 2.

I acknowledge that there are some reasonable arguments to the contrary.

Perhaps most significantly, to prevail in the §303(i)(2) litigation the Debtors were required

to establish a different set of facts and argue different legal theories than those presented in

obtaining dismissal of the involuntary petition.

The attorney's fees requested under §303(i)(1) derive from the litigation that resulted in

dismissal of the involuntary petition. This involved a relatively objective inquiry into the merits of

the involuntary petition and resolution of questions such as: how many creditors the debtor has that

hold noncontingent, undisputed debts and the amount of those debts. See 11 U.S.C. §303(b).

Ultimately, dismissal was granted based on Defendants' failure to satisfy the creditor numerosity

requirement of §303(b) (and the application of estoppel). See generally Nat'l Med. Imaging, LLC,

439 B.R. 837.  Obtaining dismissal of the involuntary petition did not require any showing of bad

faith or damages; demonstrating eligibility for an award of consequential or punitive damages

under §303(i)(2) did.[19]

These different set of relevant legal and factual premises between the §303(i)(2) litigation

---

[19]    The Debtors' §303(i)(2) claims were dismissed on summary judgment by the district court because
the evidence failed to show any consequential damages and because the evidence of bad faith, while
sufficient to prevent a determination at summary judgment, "d[id] not rise to a level that would merit
punitive damages, especially considering NMI's severe financial distress." Nat'l Med. Imaging, 2019 WL
4076768, at *4. This ruling was affirmed by the Third Circuit.  Nat'l Med. Imaging, 818 Fed App'x at 134
("we cannot say that the District Court erred in concluding, in effect and in light of the totality of the
circumstances and 'the policy surrounding § 303(i)(2)', that no reasonable jury would grant punitive
damages").

and the dismissal action arguably suggest that they are unrelated claims.  Cf. Tenafly Eruv Ass'n,

Inc. v. Borough of Tenafly, 195 F. App'x 93, 98 (3d Cir. 2006) (affirming a finding of relatedness

where claims were based on a common core of facts and the arguments were intertwined).

Another factor suggesting the "unrelatedness" of the claims is the clear delineation between

hours expended on the Debtors' §303(i)(2) claims and other §303(i) work (i.e., the ability to

distinguish counsel's billable hours between the two (2) claims).  See Hensley, 461 U.S. at 435;

Dee v. Borough of Dunmore, 548 F. App'x 58, 64 (3d Cir. 2013) (affirming a court's decision to

excise from the fee award "hours that were readily identifiable as solely related to the unsuccessful

claims").  Moreover, the Debtors engaged one (1) law firm, Kauffman, Coren & Reiss, P.C.,

("KCR") on a contingency fee basis to pursue the sanctions motion and commence damages

proceedings under §303(i)(2).  (See Decl. in Supp. of Ashland's MSJ, Ex. E) (Adv. No. 14-250)

Doc. # 156).  The majority of KC&R's billing appears to be connected to the prosecution of the

Debtors' §303(i)(2) claims and was unconnected to the dismissal proceedings.  (See id., Ex. G).

The Debtors had other counsel who seek fees for what appears to be separate work expended in

obtaining dismissal of involuntary petitions.  (See id., Ex. D).


### 3.

Notwithstanding the arguments articulated above,  I conclude that there is a sufficient

relationship between the §303(i)(1) and §303(i)(2) claims to warrant the potential award of some

attorney's fees for the work done in the unsuccessful §303(i)(2) claim.

I reach this conclusion for two (2) reasons.

First, there is textual and structural overlap within §303(i). To state the obvious, §303(i)(1)

and §303(i)(2) are rooted in the same statutory section.  This distinguishes the present litigation

from consumer protection litigation, for example, in which a plaintiff might assert claims under

multiple statutes such as the federal Truth in Lending Act,[20] the Equal Credit Opportunity Act,[21] the Real Estate Procedures Act[22] and a state unfair trade practices act (e.g., Pennsylvania's Unfair Trade Practices and Consumer Protection Law[23]).   And, as discussed in Part VII.B., supra, I have already held that subsections (1) and (2) of §303(i) are sufficiently integrated such that the attorney's fees provision of §303(i)(1) applies to §303(i)(2).

Second, at least in this case, there is an inevitable factual and legal overlap between §303(i)(1) and §302(i)(2).  At least in this case, the Defendants' "totality of the circumstances" defense to the award of attorney's fees and costs under §303(i)(1)) and the Debtors' "bad faith" contentions under §303(i)(2) are essentially opposite sides of the same coin.  The evidentiary record developed by the Debtor in prosecuting their bad faith claim under §303(i)(2) could serve to rebut the "totality of the circumstances" defense under available to petitioning creditors under §303(i)(1).  To this extent, the two (2) claims are related and some of the attorney time developing the bad faith record in the unsuccessful §303(i)(2) claim may be compensable as part of the Debtors' meritorious §303(i)(1) claim (assuming that the Debtors' defeat the "totality of circumstances" defense).

This ruling means only that in applying the principles of Hensley at the summary judgment stage, the unsuccessful §303(i)(2) claim is related to some degree to the §303(i)(1) claim and therefore, complete denial of attorney's fees incurred in the §303(i)(2) litigation is not appropriate. With a trial record, I will focus on those aspects of the claims that are related as well as "the overall

---

[20]   15 U.S.C.A. §§1601, et seq.

[21]   15 U.S.C. §§1691, et seq

[22]   12 U.S.C. §§2601, et seq. and Regulation X, 24 C.F.R. § 3500.

[23]   73 P.S. §§201-1 - 201-9.

relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

Hensley, 461 U.S. at 435.  Considering the lack of success in the §303(i)(2) case, the time spent on

the §303(i)(2) claim may be compensable only to the extent that the counsel was obliged to

develop a record that was also necessary and relevant in the §303(i)(1) litigation.  This factor,

along with the lack of success under §302(i)(2), may well result in a severe reduction in the

attorney's fees awarded for services rendered in the §303(i)(2) litigation.


## 4.

Based on the holding stated above, the relief available to the Debtors is circumscribed.

Thus, before leaving the subject, I address two (2) arguments advanced by the Debtors through

which they assert an entitlement to a far more generous award of counsel fees for the attorney time

expended in the unsuccessful §303(i)(2) litigation.

The Debtors argue that other courts have awarded fees for the unsuccessful prosecution of

§303(i)(2) claims.  And, they assert that the court's analysis of the reasonableness of their (i)(2)

fees should include consideration of the circumstances leading to their decision to pursue (i)(2)

litigation.

Respectfully, I disagree.

The Debtors cite In re TPG Troy, LLC, 2013 WL 3789344 (Bankr. S.D.N.Y. July 18,

2013), aff'd, 793 F.3d 228 (2d Cir. 2015) as a case in which the court awarded fees incurred in

pursuit of a §303(i)(2) claim that did not result in a damages award.

In TPG Troy, following dismissal of the involuntary petition, the court held a single-day

hearing on the putative debtor's motion for attorney's fees.  Id. at *4.  Although the debtor

requested punitive damages, the court did not hold an evidentiary hearing on the issue of bad faith.

Id. at *5.  Instead, the court declined to award any punitive fees in light of the large fee award

granted ($513,427.16), which the debtor had incurred during the dismissal and fee litigation phase.

It may be accurate to state that some of the fees awarded in <u>TPG Troy</u> were related to §303(i)(2) litigation. Nevertheless, to the extent the case stands for the proposition that a court may award counsel fees for attorney time expended on an entirely unsuccessful request for §303(i)(2) relief without an analysis of the degree to which there was a factual and legal overlap between the §303(i) and §303(i)(2) matters, I decline to follow it.

Further, even if <u>TPG Troy</u> was correctly decided, it is distinguishable.

On its face, the court declined to award punitive damages, but its reasoning seems to suggest otherwise. The court stated that it would not address the debtor's request for punitive damages ***because*** "[t]he amount of attorneys' fees and costs awarded by the Court in this case is very substantial ***and will hopefully serve as a deterrent to similar misconduct in the future***." 2013 WL 3789344 at *5 (emphasis added).

In light of this reasoning, another way to understand this case is to view it as one in which the court found it appropriate to grant some relief under §303(i)(2), but concluded that the attorney's fees expended in pursuing the §303(i)(1) and §303(i)(2) claims were sufficient to accomplish the deterrent purposes of §303(i)(2). Or, stated differently, while the court ostensibly denied §303(i)(2) relief, in fact, it purposely granted some punitive damages by awarding attorney's fees for counsel's pursuit of §303(i)(2) relief, while denying any separate award of punitive damages. By comparison, in this case, the Debtors obtained no relief at all under §303(i)(2).[24]

---

[24]     The two (2) other cases cited by the Debtors also are inapposite.

In <u>Anmuth Holdings</u>, the court awarded the debtors attorney's fees in connection with their §303(i)(2) litigation, even though the court found that the debtors failed to establish the amount of any compensatory damages. <u>See</u> 600 B.R. at 202, 204. Crucially, however, the debtors did establish that the petitioning creditor filed in bad faith. And, the court awarded $600,000.00 in punitive damages based on

The Debtors' second argument for the reasonableness of its (i)(2) litigation fees is that the

court should consider the reasonableness of its decision to pursue the (i)(2) litigation. The Debtors

suggest that if summary judgment is denied and they proceed to trial, they "will offer ample

evidence of Defendants' bad-faith conduct."  (Debtors' Omnibus Response In Opposition To

Defendants' Motions for Partial Summary Judgment at 37) (Adv. No. 14-250) (Doc. # 153).

I reject this argument.

In construing 42 U.S.C. §1988, the Supreme Court stated in <u>Hensley</u>:

> Congress has not authorized an award of fees whenever it was reasonable for a
> plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with
> devotion and skill.  .  .  .  [T]he most critical factor is the degree of success obtained.

<u>Hensley</u>, 461 U.S. at 436.

The Debtors offer no reason why this legal principle under 42 U.S.C. §1988 should not

govern fee awards under 11 U.S.C. §303(i)(1).  When they commenced the litigation, the Debtors'

---

$121,411.47 in submitted costs and attorney's fees.

Unlike the Debtors here, the <u>Anmuth Holdings</u> debtors proved that the involuntary filing was in bad faith and the bankruptcy court awarded punitive damages under §303(i)(2)(B), while declining to award relief under §303(i)(2)(A).

Thus, <u>Anmuth Holdings</u> debtors were partially successful in their §303(i)(2) litigation.  This would require a different analysis of their fee requests under <u>Hensley</u> than in the present case.  The attorney's fees incurred in pursuit of the unsuccessful compensatory damages claim might well be deemed ***related*** to the successful punitive damages claim, while, at the same time, if it were so inclined, the court could discount the lodestar amount to account for a limited degree of success in the §303(i)(2) action.  <u>See</u> <u>Hensley</u>, 461 U.S. at 435-36.  But such an approach is not appropriate here.  The Debtors were denied relief under both §303(i)(2)(A) and §303(i)(2)(B).  <u>See</u> <u>Nat'l Med. Imaging</u>, 818 F. App'x at 134–36.

The case of <u>In re CNG Foods LLC</u>, 2020 WL 4219679 (Bankr. E.D.N.Y. July 13, 2020), also fails to support the Debtors' contentions.

The <u>CNG Foods</u> debtor obtained dismissal of the petition, an award of costs and attorney's fees, and punitive damages for bad faith — all as the result of a consolidated hearing.  <u>Id.</u> at *1.  The debtor did not seek compensatory damages.  The debtor's §303(i)(2) claims were therefore entirely successful.  Like <u>Anmuth Holdings</u>, the <u>CNG Foods</u> court was clearly justified in awarding attorney's fees incurred in the successful litigation of the (i)(2)(B) punitive damages claim.

prospect of success on their §303(i)(2) claims may have seemed quite promising for numerous

reasons.  Their Debtors' decision to pursue these claims may well have been reasonable.  But, that

is not the test and their litigation judgment has no bearing on whether a court should award fees for

entirely unsuccessful litigation under §303(i)(2).


## VII.  THE DEBTORS' ATTORNEY'S FEES INCURRED IN CONNECTION WITH THE FLORIDA STATE COURT LITIGATION

### A.  Background

Defendants also challenge the fees incurred in the course of the Debtors' attempt to prevent

the sale of their §303(i)(2) actions by U.S. Bank in the Florida state courts and in federal court.

The salient facts are laid out in a reported decision in a related adversary proceeding in this

bankruptcy case. Nat'l Med. Imaging, LLC, 627 B.R. at 84-87, and in Part III, supra.


### B.  Applicable Legal Principles

There are few examples of courts addressing the compensability of fees under §303(i)(1)

for work performed outside of the bankruptcy court.  One such case is In re John Richards Homes

Bldg. Co., LLC., 461 B.R. 1 (Bankr. E.D. Mich. 2011), where the bankruptcy court awarded fees

for efforts to defend and collect on a §303(i) judgment in collateral proceedings.

In John Richards Homes,  the putative debtor successfully established bad faith on the part

of the petitioning creditor after winning dismissal of the petition.  The bankruptcy court awarded

$4.1 million in compensatory damages, $2 million in punitive damages, and over $300,000 in

attorney fees under §303(i).  Id. at 5.

As justification for granting fees incurred in collateral fora, the bankruptcy court primarily

relied upon the creditor's wrongful conduct after the §303(i) judgment had been issued and that the

creditor filed the involuntary petition in bad faith, causing significant damage to the debtor.[25]   The

court concluded that creditor subsequently "extended and multiplied his wrongful conduct and

consequences to [the debtor]" by attempting to shield his assets from collection on the §303(i)

judgment.  Id. at 10.  This wrongful conduct bore a "direct connection" to the fees that the debtor

incurred in protecting the judgment from discharge in the creditor's bankruptcy case.  Id.

Accordingly, the debtor's legal expenses were "absolutely necessary for it to obtain any real relief"

that it had obtained under §303(i).  Id. at 11.

On appeal, both the district court and the court of appeals affirmed this ruling.  See In re

John Richards Homes, 475 B.R. 585 (E.D. Mich. 2012), aff'd sub nom. In re John Richards Homes

Bldg. Co., 552 F. App'x 401 (6th Cir. 2013).  The district court relied in part on an analogy

between §303(i) and the fee-shifting provision at 42 U.S.C. §1988(b).  Like §303(i), §1988 does

not explicitly authorize an award of fees for work a debtor's counsel has performed in collateral

proceedings.  Nevertheless, courts have permitted such fees to prevailing parties under §1988.  Id.

at 598 (citing Balark v. Curtin, 655 F.2d 798, 803 (7th Cir.1981) ("An award of compensation for

injuries . . . would be 'diluted' if fees were denied to plaintiffs required to contest substantial

efforts to resist or obstruct the collection of civil rights judgments.  The victory would be hollow if

plaintiffs were left with a paper judgment not negotiable into cash except by undertaking

burdensome and uncompensated litigation.")).

---

[25]     The creditor sought to avoid the §303(i) judgment by moving assets from Michigan to Florida and
filing bankruptcy.  The putative debtor expended significant resources opposing the petitioning creditor's
bankruptcy, which was ultimately dismissed for bad faith and futility.  For these and other post-judgment
collection and appellate efforts, the bankruptcy court awarded substantial fees.  John Richards Homes, 461
B.R. at 10-12.

The bankruptcy court's analysis focused broadly on the fee request as a whole, which included fees
requested for defending the judgment on appeal to the district court, court of appeals, and the Supreme
Court.  Id. at 7.

The <u>John Richards Homes</u> district court reasoned that a "similar theory buttresses § 303(i)." 475 B.R. at 598 (citing <u>S. California Sunbelt Devs.</u>, 608 F.3d at 463). The court found "no legal basis for drawing a distinction between 'collateral' and 'primary' litigation in fee-shifting statutes." <u>Id.</u> Failing to award §303(i) fees incurred in "reasonably necessary ancillary litigation" would "undermine the ends of § 303(i)." <u>Id.</u> Ancillary litigation fees should be compensable under §303(i)(1) where such work "'was both useful and of a type ordinarily necessary to advance'" the §303(i) proceedings. <u>Id.</u> at 599 (quoting <u>Webb v. Bd. of Educ. of Dyer Cnty.</u>, 471 U.S. 234, 243 (1985)). The Seventh Circuit panel agreed with the district court. <u>See</u> <u>In re John Richards Homes Bldg. Co.</u>, 552 F. App'x 401 (6th Cir. 2013) (nonprecedential).

Another case that considered an award of fees for work in collateral proceedings is a case from this district: <u>In re Forever Green Athletic Fields, Inc.</u>, 2017 WL 1753104 (Bankr. E.D. Pa. May 3, 2017). Following an award of §303(i)(1) fees, the putative debtor retained a firm to assist in the collection of the fee award. <u>Id.</u> at *7. The petitioning creditor voluntarily paid the full amount of the fee award in a little over two months' time. However, the firm retained by the debtor expended over 40 attorney hours in their collection efforts — consisting solely of attempts in other courts to cause the attachment of the petitioning creditors assets. <u>Id.</u> at *13.

Relying primarily on the reasoning expressed in <u>John Richards Homes</u>, the <u>Forever Green</u> court found such expenditures to be potentially compensable, but concluded the fee request for such work was unreasonable nevertheless. The petitioning creditor had not resisted the enforcement of the fee award, and indeed paid the award in full in short order. Moreover, the debtor's law firm had not discussed payment with the creditor prior to undertaking its attachment efforts. Accordingly, the court determined that the facts of the case did not rise to the "extreme circumstances" necessary to justify an award of fees for efforts related to collection of an §303(i) award in collateral fora. <u>Id.</u> at *16.

However, the <u>Forever Green</u> court awarded fees incurred by the putative debtor for work

opposing the petitioning creditor's attempt to set off the §303(i) judgment against prepetition debt.

The creditor had filed setoff proceedings in state court after the fee award had been entered.  <u>Id.</u> at

*6.  In response, the debtor removed the proceeding to bankruptcy court.  <u>Id.</u>  The bankruptcy court

ultimately held that setoff of a fee award against a prepetition debt owed to the petitioning creditor

was impermissible.  <u>Id.</u> at *6-7 (citing <u>Diloreto</u>, 388 B.R. 637 (Bankr. E.D. Pa. 2008)).[26]

The decision of <u>In re Rosenberg</u>, 2018 WL 3933661 (Bankr. S.D. Fla. July 5, 2018) reached

a similar conclusion regarding the compensability of §303(i) fees incurred for work in collateral

proceedings.  After the putative debtor successfully prosecuted an (i)(2) claim and sustained an

award of fees on appeal in Florida, the petitioning creditor sought to extinguish the judgment by

setoff in the Eastern District of Pennsylvania.  <u>Id.</u> at *4, *7.   The debtor incurred fees successfully

opposing those setoff efforts.[27]  <u>Id.</u>

In reliance upon <u>John Richards Homes</u> and <u>Forever Green</u>, the bankruptcy court awarded

fees to the debtor for this work.  <u>Id.</u> at *7-8.  It concluded that "[o]pposing the Set-Off Motion in

Pennsylvania was an essential part of the effort to enforce or collect on the bad-faith judgment

entered against U.S. Bank."  <u>Id.</u> at 8.  The lynchpin in the court's decision was the relatedness of

the §303(i) judgment to the collateral proceeding in which the requested fees were incurred.  "The

fees spent protecting the bad-faith judgment do not become 'unrelated to this case' because U.S.

---

[26]    The court grounded its award of fees for work in opposing setoff on two (2) bases.  The first was
that, as a matter of law, the court had determined that a creditor had no right to setoff its §303(i) fee award
against other debt.  Because the debtor was justified in opposing the creditor's impermissible setoff attempt,
its fees incurred therein were reasonable.  <u>Forever Green, 2017 WL 1753104</u> at *13.  The second basis was
the fact that creditor had decided to press its setoff claim in state court, rather than the bankruptcy court
where the fee award had been entered.  The court viewed such action as "blatant forum shopping."  <u>Id.</u>

[27]    The district court judge denied setoff on the basis that the §303(i) judgment was not "mutual" with
the prepetition debt owed from the putative debtor to the petitioning creditor.  <u>U.S. Bank, Nat'l Ass'n v.
Rosenberg</u>, 581 B.R. 424, 428-29 (E.D. Pa. 2018).

Bank elected to pursue set-off in a remote court."  Id. (quoting Forever Green, 2017 WL 1753104,

at *12-13).

 None of these cases is on all fours with the issue of collateral fees presented in the present

dispute.  Nevertheless, I distill a few principles that will frame my analysis.

 First, reasonable fees incurred by putative debtors in defending or collecting on a §303(i)

judgment are compensable under §303(i)(1).  This conclusion flows naturally from the "general

rule" in fee-shifting schemes that "all costs reasonably incurred in litigating the fee action are

compensable, including fees spent to enforce a judgment or collect fees."  John Richards Homes,

475 B.R. at 598 (citing Balark, 655 F.2d at 803).  Indeed, the Third Circuit has endorsed such an

approach in the context of the fee-shifting provision at 42 U.S.C. §1988(b).  See Titan Indem. Co.

v. Cameron, 77 F. App'x 91, 98 (3d Cir. 2003) (quoting Balark, 655 F.2d at 803) (a plaintiff's

"victory at trial would have been hollow indeed if he 'were left with a paper judgment not

negotiable into cash except by undertaking burdensome and uncompensated litigation.'").

 The analogy of §303(i)(1) to the fee-shifting provisions at 42 U.S.C. §1988(b) is strong.

Both statutes vest courts with the discretion to award a reasonable attorney's fee to prevailing

parties.  And, the compensatory policy goals underlying these fee-shifting statutes are similar.

Compare Balark, 655 F.2d at 803 (§1988 "fulfill[s] the purposes of the civil rights laws by

transferring the costs of litigation to those who infringe upon basic civil rights transfers"), with In

re Advance Press & Litho, Inc., 46 B.R. 700, 702 (Bankr. D. Colo. 1984) (§303(i) embodies

congressional judgment that, even in some good-faith circumstances, the losing creditors should

"pay for the burden they had created").  Given the Third Circuit's holding in Titan Indemnity Co.,

there is no reason to treat the scope of compensable fees under §303(i)(1) any differently than those

under §1988.

 A second principle I distill from the case law is that the compensability of fees under

§303(i)(1) does not depend on the forum in which the fees were incurred.  I agree with the John Richards Homes district court's conclusion that there is no legal basis for drawing a distinction between "collateral" and "primary" litigation for purposes of awarding §303(i) fees. 475 B.R. at 463.  Were the rule otherwise, a petitioning creditor could avoid fee shifting simply by litigating certain disputes in other courts.

Instead, the compensability of requested collateral proceeding fees under §303(i)(1) turns on their relatedness to the §303(i) proceeding and the reasonableness of the fees incurred.  See Rosenberg, 2018 WL 3933661, at *8.  Such a determination should be based on the totality of the circumstances.  A petitioning creditor's attempt to nullify or undermine collection of a §303(i) judgment is certainly one situation where reasonable fees incurred by the debtor in response may be awarded.  See id.; In re Forever Green Athletic Fields, Inc., 2017 WL 1753104, at *13.

A third principle applicable here is that awards for fees incurred in collateral proceedings should be limited to legal services necessary to support the efficacy of the debtor's §303(i) claim.

Section 303(i) is not a vehicle for putative debtors to load up fees against petitioning creditors.  The various principles used by courts to "delineate between acceptable and unacceptable fee requests" are applicable here.  See Forever Green, 2017 WL 1753104, at *14 (rejecting a debtor's request for fees where the fees incurred were unreasonable in light of a lack of billing judgment).  Putative debtors should expect to explain why the efforts expended were "both useful and of a type ordinarily necessary to advance'" the §303(i) proceedings.  John Richards Homes, 475 B.R. at 599.  And of course, a putative debtor's counsel "should demonstrate the same level of billing judgment and sensitivity in fee shifting situations as they do with their own private clients." W. Virginia Univ. Hosps., Inc. v. Casey, 898 F.2d 357, 365 (3d Cir. 1990).

A final principal from the cases cited above — and from my prior ruling in the Debtors'

ongoing voluntary bankruptcy proceedings[28] — is that a creditor's attempt to setoff a §303(i) judgment against prepetition debt is impermissible.

   This is not a novel proposition. As the Bankruptcy Appellate Panel of the Ninth Circuit observed over a decade ago, "[t]he consensus of courts is that a setoff of this sort is impermissible." Macke Int'l Trade, Inc., 370 B.R. at 255 (citing 2 Collier ¶ 303.15[8], at 303-125 (15th ed. rev. 2005)). At least three (3) different courts from this district have reached the same conclusion. See Forever Green, 2017 WL 1753104, at *7; Diloreto, 388 B.R. at 655, aff'd, 442 B.R. 373 (E.D. Pa. 2010); In re Schiliro, 72 B.R. 147, 149 (Bankr. E.D. Pa. 1987).

   This no-setoff rule is premised on the assumption that permitting setoff would undercut the deterrent effect of §303(i) against frivolous filings. If the award of a §303(i) judgment against a petitioning creditor would cause only "a reduction in his probably-uncollectible judgment as a penalty for requiring a debtor to defend an unjustified case . . . the disincentive built into the system to discourage such actions would evaporate." In re Schiliro, 72 B.R. at 149. Permitting a setoff of a §303(i) judgment therefore "would severely weaken" §303(i)'s remedial provisions. In re Diloreto, 388 B.R. at 655. But see In re Apache Trading Grp., Inc., 229 B.R. 887, 890 (Bankr. S.D. Fla. 1999) (permitting setoff where the petitioning creditor did not act in bad faith and setoff would avoid actual payments back and forth between the putative debtor and petitioning creditor).

## C. Discussion

   I conclude that the attorney's fees incurred by Plaintiffs in opposing U.S. Bank's efforts to execute on its judgment by sale of the Debtors' §303(i)(2) chose in action in Florida state court are potentially compensable.

---

[28]   See Bench Op. (Oct. 14, 2021) (Adv. No. 20-219, Doc. # 46, at 6-7), appeal pending.

U.S. Bank's execution efforts in the Florida courts were the functional equivalent of a setoff attempt. It is fair to assume that U.S. Bank would have been the likely purchaser at the foreclosure sale of this asset.[29] Because its prepetition debt served as the basis for the foreclosure sale, U.S. Bank could have used a credit bid and almost certainly would have been the only bidder. Upon winning the auction, U.S. Bank would pay no money to the sheriff (other than perhaps a small amount for costs), and, in return, it would have extinguished the §303(i)(2) claim, in that it would have become the owner of a cause of action against itself.

This is nearly the exact same kind of transaction that courts have prohibited via the no-setoff rule. If §303(i) defendants are not permitted to set off a putative debtor's §303(i) judgment against prepetition debt, then neither should they be permitted to employ their nonbankruptcy judgment to execute on the underlying §303(i) choses in action prior to the debtor's ability to litigate its claim. Erosion of §303(i)'s deterrence against frivolous and abusive filings occurs in both instances.

In fact, executing against a §303(i) chose in action arguably could erode deterrence even more than mere setoff of a §303(i) judgment. Execution could cut a pending §303(i) suit off at the knees, while liquidating it at a fire sale price. A setoff following foreclosure therefore could make unwarranted §303 petitions even less costly to petitioning creditors than a setoff following judgment.

U.S. Bank's attempt to foreclose on the Debtors' §303(i)(2) chose in action therefore, was a prohibited end-run attempt in a collateral forum to effect the equivalent (or worse) of a setoff of its

---

[29]    This is a likely outcome given U.S. Bank's superior knowledge of the merits of the case and its ability to credit bid.

potential liability on that claim.[30]  U.S. Bank's action therefore paved the way for an award of

reasonable fees incurred by the Plaintiffs in response.

    This holding does not resolve the issue fully.  The fees requested for collateral forum work

must also be sufficiently related to the §303(i) proceeding and be reasonable under the

circumstances.

    I can conclude easily that these fees incurred by Plaintiffs in opposition to U.S. Bank's sale

motion are sufficiently related to the §303(i) proceedings.  Where §303(i) defendants have

attempted to effect offset of §303(i) judgments, courts have granted the putative debtor fees for

resisting those efforts.  See In re Rosenberg, 2018 WL 3933661, at *8; Forever Green, 2017 WL

1753104, at *13; accord In re John Richards Homes, 475 B.R. at 600 (awarding fees incurred in

protecting an §303(i) judgment from discharge in a bankruptcy filing).  Assuming — as I have held

— that US Bank's attempt to execute against the Debtors' §303(i) chose in action is prohibited,

there is no question that the Debtors' legal efforts in direct opposition to that sale are related to

their §303(i) claim.  If Plaintiffs had not resisted the sale motion, they stood to lose their §303(i)(2)

cause of action.

    Perhaps the closer question is the reasonableness of this requested category of fees.  The

Debtors failed on two (2) fronts in connection with their §303(i)(2) claims and U.S. Bank's sale

---

[30]    Defendants correctly point out that in all three (3) cases where courts have awarded collateral
proceeding fees, the putative debtors had previously obtained a §303(i) judgment that they were attempting
to protect.  However, for the reasons explained in the text, infra, I do not perceive such a distinction to be
dispositive of the present issue.

    Defendants also argue that a distinguishing feature of these cases is that each found the creditor to
have filed the petition in bad faith.  Again, that is true, but not dispositive.  Bad faith on the part of the
petitioning creditor in filing the involuntary petition can expose the creditor to liability for consequential and
punitive damages.  But an absence of such bad faith in filing does not determine whether the creditor's
actions after filing will result in an award of fees for work in collateral fora.  The decision to award such
fees depends on the creditor's post-filing conduct.  A creditor who filed in good faith — yet took steps post-
petition to offset a judgment for costs and fees under §303(i)(1) — could still be liable for the reasonable
costs incurred by a debtor in opposing such efforts.

motion: (1) they failed to convince the Florida state courts to deny U.S. Bank's sale motion;[31] and (2) they later lost on the merits of their §303(i)(2) claims when the district court's grant of summary judgment to the Defendants became final after appeal..  Nevertheless, I find that these failures are not necessarily dispositive.

"Success" in the context of resisting the sale motion is not the same as "success" on the merits of the §303(i)(2) claims themselves.  The Debtors' opposition to the sale motion sought only to preserve their control of the §303(i)(2) claims.  Those legal efforts did not relate to winning or losing the merits of the §303(i)(2) claims.  Thus, I do not consider fees incurred in litigating the sale motion to be in the same category as non-compensable fees incurred in litigating the merits of the §303(i)(2) claims.

The Debtors' failure to obtain the relief requested from the Florida state court (and appellate courts) also does not convince me that the fees incurred therein must be denied.  The Debtors' actions as a whole did succeed in preserving ownership of their §303(i)(2) claims, which the Debtors litigated until their appellate rights were exhausted.  Failure to prevail on one particular motion in the Florida state courts, when the Debtors ultimately achieved their desired ends — i.e., preserving their §303(i)(2) claim while they exercised their appellate rights — does not render the fees incurred in opposing that motion non-compensable.

Moreover, the impetus for the Debtors' incursion of these fees was U.S. Bank's improper attempt to perform a functional setoff of the §303(i)(2) claim's value against other debt.  U.S. Bank's conduct therefore opened the door for the Debtors to recoup additional attorney's fees

---

[31]    I use the plural term "courts" because, as previously explained, the Debtors also attempted, unsuccessfully, to obtain a stay pending appeal from the Florida trial court, the Florida District Court of Appeals, and the Third Circuit.  See Nat'l Med. Imaging, LLC, 627 B.R. at 86-87.

necessarily incurred to preserve their claim.

The Debtors' decision to contest the asset execution was reasonable in light of the potential extinguishment of their §303(i)(2) claim. This conclusion is buttressed by one (1) other consideration. If U.S. Bank had been successful in extinguishing the §303(i)(2) claim, what was to stop this creditor from dipping into the same playbook and attacking the Debtor's §303(i)(1) claim? The answer to that question is "nothing." And, while the nexus between the Debtor's efforts in the Florida courts to preserve their §303(i)(2) claims and the present §303(i)(1) claim is somewhat more attenuated, the nexus exists.

For these reasons, I conclude that the undisputed material facts do not demonstrate that the Defendants are entitled to judgment as a matter of law with respect to the attorney's fees incurred by the Debtors in the Florida state courts in attempting to prevent U.S. Bank's execution against their §303(i)(2) actions. Viewing the record in a light most favorable to the Debtors, these attorney's fees appear to be sufficiently related to the §303(i) proceedings and reasonable under the circumstances. Therefore, the Debtors are entitled to take this part of their claim to trial.

## VIII.  THE DEBTORS' ATTORNEY'S FEES INCURRED IN CONNECTION WITH THE PENDING CHAPTER 11 CASES

The next set of challenged attorney's fees are those that the Debtors incurred in their current voluntary chapter 11 bankruptcy cases. For the chapter 11 fees to be compensable under §303(i)(1), the same test discussed above applies here — they must be sufficiently related to the §303(i) proceeding and reasonable under the circumstances. Defendants argue that the fees cannot be included in any relief granted under §303(i)(1). I mostly, but not entirely, agree with the Defendants.

The Debtors filed for chapter 11 relief in June 2020 after failing to convince the Florida

state court (and both a state and federal appellate court) to deny or stay U.S. Bank's execution sale of their §303(i)(2) choses in action. The 2020 bankruptcy filing stopped the pending execution sale of the Debtors' §303(i)(2) claims by operation of the automatic stay.  See Nat'l Med. Imaging, 627 B.R. at 86-87.

I acknowledge that there is a limited "but for" causal nexus between U.S. Bank's improper attempt to execute on the (i)(2) chose in action and the Debtors' 2020 bankruptcies. To be more specific, the bankruptcy filings became the remedy of last resort once the Debtors' efforts to prevent, or at least stay, the Florida execution proceedings failed. This suffices to support the award of at least some attorney's fees incurred in connection with the bankruptcy case.

The relatedness is not open-ended, however.  The attorney's fees incurred in general chapter 11 case administration are mostly too attenuated to the §303(i) proceeding to be compensable. An award of attorney's fees for all of these services is not warranted.  The relatedness to the §303(i) proceeding is limited to those legal fees incurred in determining the propriety of the chapter 11 filing in the first place, effecting the filing and defending the case filing in order to maintain the automatic stay.  Any additional legal work involved in advising the Debtors on case administration and seeking chapter 11 plan confirmation lack a sufficient nexus to the §303(i) claims to warrant shifting the entire cost of the proceedings to U.S. Bank.  Therefore, I conclude that it would be inappropriate to require the Defendants to pay the entirety of the Debtors' chapter 11 fees in these circumstances.  The scope of the compensable attorney's fees must be decided at trial.

## IX.  THE DEBTORS' ATTORNEY'S FEES INCURRED IN CONNECTION WITH THE ADVERSARY PROCEEDING TO SUBORDINATE OR INVALIDATE LIENS, AND OBTAIN DECLATORY RELIEF

The Debtors filed an adversary proceeding in their 2020 chapter 11 cases, seeking to subordinate U.S. Bank's claim, invalidate U.S. Bank's lien and obtain certain declaratory relief. See Nat'l Med. Imaging, LLC, 627 B.R. at 82.  In that adversary proceeding, I denied most of the relief requested (sometimes without prejudice), but granted the Debtors' request for declaratory relief.  I entered an order that provided, in pertinent part:

3. It is **DECLARED** that U.S. Bank may not set off its existing judgments, or credit its claim in these bankruptcy cases, against any liability to the Plaintiffs that it may be determined to have under 11 U.S.C. §303(i) in Adv. No. 14-250.

4. It is **DECLARED** that U.S. Bank may not employ its existing judgments to execute against the Plaintiffs' claims against U.S. Bank under 11 U.S.C. §303(i).

(Order entered Oct. 8, 2021) (Adv. No. 20-219, Doc. # 45).

This category of fees stands on similar footing to the analysis of chapter 11 fees generally, which is the reason, in large part, that the Defendants assert theses fees are not compensable under §303(i)(1).  I agree that the two (2) categories should be treated similarly and therefore, I again agree, in part, with the Defendants. To the extent that the relief sought in the adversary proceeding related to the general administration of the chapter 11 cases — e.g., the rights of the debtors and creditors in those cases — the adversary proceeding is not sufficiently related to the §303(i) proceeding to warrant the award of counsel fees under §303(i)(1).

However, the Debtors did obtain some relief by virtue of the adversary proceeding that is related to the preservation of their §303(i) claims.  Presently, I have no record that would permit me to distinguish between the compensable and non-compensable attorney's fees incurred to that end.  Therefore, I will deny this request for summary judgment and determine the issue after trial.

## X.  ASHLAND'S SEPARATE ARGUMENTS

Ashland has moved for summary judgment with respect to all §303(i)(1) costs and fees that the Debtors may seek in this matter.

In reliance primarily upon the opinion of the district court that granted summary judgment for the Defendants in the §303(a)(2) action, Ashland makes two (2) arguments.  First, the court should exercise its discretion to deny or drastically reduce the requested costs and attorney's fees based on the totality of the circumstances.  Second, Ashland is not liable for any costs and fees that may be awarded in this case in light of its minimal involvement in the involuntary proceedings.

Upon review of the limited record before me, I do not find summary judgment to be warranted on either of these two (2) issues.  There appears to be some evidence of fault and overreach on both sides of the dispute.  I simply cannot conclude that the undisputed material facts, viewed in a light most favorably to the non-moving Debtors, warrant a finding that the presumption of an award of costs and fees has been rebutted.

Nevertheless, a few brief observations warrant mention.

Ashland correctly notes that some courts have ruled that bankruptcy courts are not required to hold petitioning creditor jointly and severally liable for awards under §303(i).  See, e.g., Maple-Whitworth, 556 F.3d at 746; In re Navient Sols., LLC, 627 B.R. 581, 593-94 (Bankr. S.D.N.Y. 2021), aff'd 2022 WL 863409 (S.D.N.Y. Mar. 23, 2022); Anmuth Holdings, 600 B.R. at 205. However, the wording of the statute may indicate that apportioning liability on a causal basis is appropriate only for awards under §303(i)(2).

Subsection (i)(1) of §303 states that judgment may be granted "against the petitioners," whereas subsection (i)(2) provides for judgment "against any petitioner that filed in bad faith."  See

§303(i).[32]  "This suggests, at least as to paragraph (2), that liability could be allocated among the petitioners."  2 Collier ¶ 303.33[9] (16th ed. 2022); see also In re Advance Press & Litho, Inc., 46 B.R. 700, 705 (Bankr. D. Colo. 1984) (concluding that awards under §303(i)(1) "should be imposed against all petitioners, jointly and severally").

I need not resolve this legal issue at this stage.   Ashland clearly played a smaller role in the involuntary petition against the Debtors than U.S. Bank and does not appear to have participated in U.S. Bank's efforts to foreclose on the §303(i)(2) choses in action.  Assuming §303(i)(1) permits the court to allocate liability for costs and fees on a relative-fault basis, the degree of that relative fault is unclear.  The legal and factual determinations involved in apportioning liability must be made after trial.

Ashland also argues that even the fees incurred in defense against the petitions are unreasonable in light of the Debtors' irreparable financial distress.  It points to the district court's finding in the §303(i)(2) action that NMI was in the process of shuttering its business prior to filing of the involuntary cases and had communicated that intention to U.S. Bank.  See Nat'l Med. Imaging, LLC v. U.S. Bank, N.A., 2019 WL 4076768, at *5.  Ashland urges it was unreasonable for the Debtors to incur nearly $1.5 million in fees and costs opposing the involuntary petitions.

Ashland is correct to assert that courts expect attorneys to exercise billing judgment in fee shifting situations to avoid running up unnecessary fees for the opposing party.  See Forever Green, 2017 WL 1753104, at *14-15.  Given the paucity of the record on this issue, however, I find it unripe for summary judgment.

---

[32]   It appears that the Maple-Whitworth court did not consider this difference in statutory language.  See 556 F.3d at 745-46.  Moreover, the issue in Maple-Whitworth was the narrower question of whether §303(i) required all petitioning creditors to be joined and served with the §303(i) motion.  Therefore, the court's commentary on whether a court could apportion §303(i) liability upon a basis other than joint and several liability was dicta.  In addition, the court's citation to Higgins, 379 F.3d at 707 does not support its conclusion on this issue.

## XI.  CONCLUSION

For the reasons set forth above, the Defendants' Motions for Summary Judgment will be

denied.  An order consistent with the Opinion will be entered.


**Date:   September 2, 2022**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**